## LYLE v. HOLMAN.

Court of Appeals of Kentucky.
March 20, 1951.

G. D. Milliken, Jr., Bowling Green, for appellant.

J. T. Orendorf, L. B. Finn, Bowling Green, for appellee.

MOREMEN, Justice.

The appellant, J. T. Lyle, is the owner of certain real estate located in Bowling Green, Ky., fronting 51 feet on the east side of College St., between 6th and 7th Sts., and ex-tending back between parallel lines a distance of 110 feet. In the rear of this lot is a 10 foot alley which, for a space of about 10 feet, abuts the lot belonging to appellant.

The appellee, T. J. Holman, is the owner of a large tobacco warehouse which fronts on 7th St. between State and College Sts. and in which loose leaf tobacco is sold on the floor during the tobacco season of each year. This warehouse fronts 100 feet on 7th St. and extends back from the edge of the sidewalk toward 6th St. a distance of 300 feet. On the west side of the warehouse is an alley 10 feet wide which runs from 7th St. the entire length of the warehouse and is the same alley which abuts a portion of the property belonging to appellant. On the east side of the warehouse is a 20 foot alley which is known as Mc-Cormack's alley.

Holman used McCormack's alley for the purpose of unloading tobacco from trucks, which tobacco was sold on the warehouse floor and delivered to purchasers into their trucks in the 10 foot alley on the west side of the warehouse. These trucks for a period of some 20 years during the tobacco season had used about 11 feet of space on the southerly portion of the property owned by Lyle as a means of egress to College St. Across the rear of the warehouse is a strip of ground 10 feet in width extending from McCormack's alley on the east to the 10 foot alley on the west side of the warehouse and an extension of this strip of ground across the property of Lyle would lie in the 11 foot strip here in question. This strip in the rear of the warehouse has never been used as a means of exit and there is proof to the effect that the trucks were unable to turn into it when removing tobacco from the warehouse.

The appellant purchased the College St. property on December 1, 1945, and, on the 12th day of August 1948, obtained a building permit from the city and began the construction of a building on the ground over which the tobacco trucks had moved upon leaving the warehouse.

On the 18th day of September 1948, appellee filed a suit against appellant in which he alleged that 11 feet of the southern por-

tion of the strip of land belonging to Lyle had for more than 15 years been used by appellee and the public generally as an alley or passway affording ways of ingress and egress from College St. to the warehouse belonging to appellee, averred that Lyle was obstructing said passway, and sought a permanent injunction mandatorily directing Lyle to remove the improvement from this strip of ground.

It was the contention of appellant that while trucks belonging to purchasers of tobacco may have intermittently used this strip of ground for the purpose of egress from the west side of the Holman tobacco warehouse, such use was infrequent and not a continuous, uninterrupted use for the statutory period in that it was used only during the tobacco selling season. There were extended periods during which this entire strip of ground was fenced or completely blocked to such an extent that it could not have been used and was not used except during the tobacco season. The appellant further contended that other means of ingress to and egress from the west side of the tobacco warehouse existed, but had not been utilized by truck drivers.

It is the contention of appellant that: (a) The use which will give title by prescription to an easement must be substantially the same in quality and characteristics as that which will give title to real estate by adverse possession, (b) therefore the use must be under a claim of right, continuous and uninterrupted, open and notorious, exclusive, with the acquiescence of the owner of the servient tenement for the full prescriptive period; (c) an occasional use for a particular purpose is not sufficient to sustain the right of an easement by prescription and, (d) the unorganized public generally is incapable of receiving a grant and therefore cannot acquire a prescriptive right of easement.

■ We agree that, in many particulars, the elements necessary to be proved in order to establish the right to a prescriptive easement are similar to those that must be shown by one who attempts to acquire title to property by adverse possession, but it should be borne in mind, during the consideration of such cases, that estates sought to be fixed in the two instances are different.

■ In the adverse possession cases, the disseisor attempts to assert absolute and unqualified ownership of the entire property. He must be relentless in his insistence that the land belongs to him, and no one else has any right in connection with it. In 1 Am. Jur., Adverse Possession, Sec. 13, in discussing the kind of title acquired, it was written: "On the expiration of the limitation period the disseisor becomes possessed of a vested right or title, and that title relates back to the inception of his possession. It is said that his title is as effective as if there had been a formal conveyance. He has an indefeasible title which can only be divested by his conveyance of the land to another, or by a subsequent disseisin for the statutory limitation period."

■ In the case of Stephenson Lumber Co. v. Hurst, 259 Ky. 747, 83 S.W.2d 48, it was held that one may obtain a perfect title by adverse possession. When we speak of such a title we mean that no one else has any right in connection with the land and, while an easement is property of the nature of land, it is an incorporeal right—always separate and distinct from the right to occupy and enjoy the land itself. When acquired by prescription it may be conditional and restricted according to the use and purpose of its enjoyment during the prescriptive period. It will not ripen into a greater estate after the period of limitation has passed. The right is crystallized as to form during the waiting period and is of the nature of the use during that period. This does not mean that the owner of the right to the easement has the right to the absolute enjoyment of the privilege during every moment to the exclusion of all others. The quality of an easement presupposes two distinct tenements, the dominant to which the right belongs and the servient upon which the easement is imposed. But the dominant is carved out of the servient estate only to the extent of and according to the nature of the use during the prescriptive period. This distinction was pointed out in the case of Ben Snyder, Inc., v. Phoenix Amusement Co., 309 Ky. 523, 218 S.W.2d 62, 64, where-

in it was said: "Again appellant takes the position that the use being sporadic, was not such a use as would ripen into an easement by prescription. We need only call attention to the fact that a right obtained by prescription means a right according to the nature of the use to be made of the easement. Here the right to use is only as a fire exit. It was maintained for that purpose. The areaway was kept open for that purpose. The lights were placed there for that purpose. The doors with safety equipment were maintained for that purpose. It would be absurd to say that, because there were not frequent fires requiring equally frequent use of the areaway as a means of escape, the right would be defeated, when, as a matter of fact, it was used at all times according to the nature of the use to be made of the easement."

In the case of a claim of title by adverse possession, the hostile possession must be exclusive and continuous for every day of the statutory period, but, as it was stated in the case of Pickel v. Cornett, 285 Ky. 189, 147 S.W.2d 381, 382: "A private passway may be acquired by prescriptive use although a right of way is not strictly a subject of continuous, exclusive, and adverse possession. It is sufficient if the use exercised by the owner of the dominant tenement is unobstructed, open, peaceable, continuous and as of right for the prescribed statutory period."

The easement here was the subject of continuous, exclusive and adverse possession when defined in conformity with the nature of its use.

Upon the trial of the case in the Circuit Court, the Chancellor, in an opinion filed, fixed the burden of proof and found that the record sustained appellee's theory of the case, saying:

"It is true that the use must be under a claim of right or adverse. But it was written in the case of Pickel v. Cornett supra as follows:

" 'Where the claimant has shown such long continued use, it will be presumed the use was under a claim of right, and the burden is upon the owner of the servient estate to show that the use was merely permissive.'

"In Smith v. Fairfax, 180 Ky. 12, 201 S.W. 454, 455, it was said:

" 'Where the use of a passway has extended over a long period of years, very slight evidence will be sufficient to show that it was enjoyed under a claim of right; and when the owner of the servient estate undertakes to close the passway, the burden is on him to show that the use was merely permissive and to explain away the presumption that its uninterrupted enjoyment for more than 15 years was exercised under a claim of right.'

"As to the question of the use being under claim of right, the evidence shows that no request for permission to use the passway was ever made and so far as the plaintiff, Holman, is concerned, no protest against its use was ever made to him. Easements, such as the one in issue in this case, are founded on acquiescence and this record shows an acquiescence on the part of the owners of defendant's property for a period of at least 20 years in the use of this passway for the purpose of the removal of tobacco sold on plaintiff's loose-leaf floors."

This we believe to be a correct statement of the law and a proper summary of the facts disclosed by the record.

The evidence further discloses that although the passway was blocked for limited periods by persons who temporarily utilized the space, the right of tobacco trucks to use the right of way during the market period was never questioned, therefore the particular use of this easement was not interrupted for a period of over 20 years.

The easement established here is not one for the public generally. The proof established only that it was a private way for the use of appellee and those to whom he sold and delivered tobacco during a determinable period of each year. It was for use in connection with the operation of appellee's business and, resulting from its functional necessity, became a part of it.

Judgment affirmed.