**Donald E. ROMINGER, Appellant,**

v.

**CITY REALTY COMPANY, Inc., et al.,
Appellees.**

Court of Appeals of Kentucky.

May 22, 1959.

Thomas D. Shumate, Richmond, for appellant.

Guy K. Duerson, Berea, George C. Robbins, Richmond, for appellees.

STEWART, Judge.

Plaintiff, Donald E. Rominger, sought in circuit court to establish a passway, both public and private, over a tract of land owned by defendant, City Realty Company, Incorporated. Additionally, plaintiff asked for $5,000 damages for the obstruction and partial destruction of the passway against the owner of the tract and two contractors, J. W. Risk and James C. Todd, who did excavating upon the land under a contract with the owner. An injunction to restrain the further impairment of the passway was also prayed for.

Upon trial of this action before a jury, the lower court directed a verdict for defendants at the close of all the evidence. This appeal is from that ruling. We shall refer to the parties hereinafter as "plaintiff" and "defendants."

Plaintiff is the owner of a house and lot the west side of which front over 100 feet on North Broadway Street in the City of Berea. We shall herein refer to this property at times as the "funeral home." The east side or rear of this lot abuts on School Place, which is also known as Pasco Street. The house on this lot has been used by plaintiff and other previous owners of the property for over 50 years as a funeral home. Plaintiff's occupancy of the property began as a tenant on November 1, 1941, and he acquired sole title to it on November 1, 1950, although he had owned an undivided one-half interest in it since October 13, 1943.

Defendant, City Realty Company, now has title to a vacant lot which lies south of and adjacent to plaintiff's property. This will be referred to in this opinion as the "Welch lot," because until very recently, and for a long period of time, one John Welch was the owner of it. The west side of this lot faces 50 feet on North Broadway Street and it extends back to School Place or Pasco Street. About the middle of the Welch lot, as one travels northwardly, the street falls away or rapidly descends, with the result that the front of plaintiff's property is 10 or 12 feet higher than the street level.

Since the funeral home has existed on plaintiff's lot, entrance has been gained to it from North Broadway Street by means of a driveway or passway over a portion of the Welch lot. Shortly before the commencement of this litigation, the Welch lot was conveyed to defendant, City Realty Company, and the latter, soon after securing title to it, entered into a contract with defendants, J. W. Risk and James C. Todd, to excavate a portion of it for a commercial purpose. This excavation work began on August 25, 1956, and this event precipitated this court action.

On the theory that the public generally, and plaintiff in particular, had acquired a prescriptive use of the passway over the Welch lot, plaintiff instituted this action

wherein he undertook below to obtain the relief heretofore mentioned. Defendants take the position the passway at all times has been used permissively by plaintiff so that he has obtained no interest in it and, furthermore, that the public has never acquired any rights in it.

The passway, approximately 12 feet in width, entered the Welch lot from the east side of North Broadway Street and extended across this lot eastwardly until it reached the funeral home. Then it crossed onto the funeral home lot and traversed the back of that property until it came out on School Place or Pasco Street. Until December 10, 1937, the passway on the funeral home lot led to a barn with a fence around it, and one had to go through a double gate and barn doors to get onto School Place or Pasco Street. On the date just mentioned, however, the barn and fence were destroyed by fire, and since that time this portion of the passway has apparently been maintained as a sort of private access to the funeral home from School Place or Pasco Street. This point may be readily assumed for the reason that a sign has been kept for years near the entrance to the funeral home tract from School Place or Pasco Street, with this legend painted on it: "Private Drive. No Trespassing."

As to that portion of the passway located on the Welch lot, the evidence does not indicate that plaintiff in his individual capacity made claim to any interest in it as long as Welch owned it, which was until January 1, 1955. In his testimony, as a witness for defendants, Welch introduced in evidence a written lease entered into between him and plaintiff, dated August 26, 1952, which revealed plaintiff rented the entire lot for a year for the sum of $50. Welch further stated this lease was renewed orally for three or four years on the same basis.

Plaintiff's explanation of this lease, and it seems to us a rather futile one, was that he rented the lot for parking purposes

and this contract did not, according to his belief, embrace the passway. Many other witnesses introduced by defendants, some of whom were former owners and occupants of the funeral home, corroborated defendant's testimony that the passway over the Welch lot was never used by these owners and occupants except permissively.

A number of witnesses who testified in behalf of plaintiff stated they had frequently used this passway, and had seen others use it, in traveling from North Broadway Street to School Place or Pasco Street. They stated this use covered a period of 40 years. On cross-examination each of these witnesses said he claimed no special interest or right in and to the passway. Defendants' evidence was to the effect that no one ever traversed the passway except to go to or from the funeral home on business.

■ In order to establish that the passway had ripened into a private or a public way, plaintiff must show it was used adversely by him or his predecessors in title or by the public generally in an open continuous and uninterrupted manner for 15 years. See Lyle v. Holman, Ky., 238 S.W.2d 157; Riley v. Buchanan, 116 Ky. 625, 76 S.W. 527, 63 L.R.A. 642.

■ It is our view the proof in this case is conclusive that the passway over the Welch lot, during its entire existence, has been enjoyed only in a permissive capacity by the various owners of the funeral home, including plaintiff. The latter's acceptance of the lease contract from Welch on August 12, 1952, cannot be satisfactorily explained otherwise than it was an overt act by which plaintiff acknowledged Welch had absolute title to the passway over the Welch lot. This fact alone, in our opinion, militates against any claim that there was a passway of a private nature. It is a well-settled principle of law that the permissive use of contested property is in-

sufficient to establish a prescriptive title therein. See White v. Smith, Ky., 265 S.W.2d 937; Mills' Adm'x v. Mills, Ky., 265 S.W.2d 458.

■■ Nor do we believe under the evidence presented that the general public acquired an interest in the passway. It has been pointed out that one of the essentials of the establishment of a road by prescription is the use of the land in question by the public and such use must be by the public generally as a way common to all; the mere use by a few individuals, from time to time, as distinguished from the public generally, does not constitute such use as creates title in the public by prescription. See 39 C.J.S. Highways § 5, pp. 923–924.

Plaintiff's evidence disclosed some trucks, automobiles and pedestrians traveled across the entire length of the passway, going to and from North Broadway Street and School Place or Pasco Street. We get the impression that these trips were of a casual or sporadic character. It will be recalled that each of the witnesses who testified along this line claimed no right in the passway on behalf of the general public.

It seems to us the scheme resorted to in laying out the passway here emphasizes its exclusiveness. The segment of it located on the Welch lot extended from North Broadway Street to the funeral home. For a long time, this was the only section of the passway that afforded immediate access to the funeral home. Then, for many years the rear portion led from the funeral home only to a barn. It was not until after the barn burned that this part of the passway became used to some extent as a means of ingress and egress to and from School Place or Pasco Street. The privacy of this part of the passway is pointed up by the "No Trespassing" sign that has been kept posted at its entrance. Furthermore, the two portions of the passway never appeared to constitute one continuous way.

A careful analysis of all the evidence in this case leads us to the conclusion that the passway over the Welch lot is neither a private nor a public thoroughfare. The lower court correctly instructed the jury to find for defendants.

Wherefore, the judgment is affirmed.