BLUEGRASS MANOR, a Kentucky Limited Partnership, and Plaza Centers, Inc., General Partner of Bluegrass Manor Limited Partnership, Appellants,

v.

MALL ST. MATTHEWS LIMITED PARTNERSHIP; Louisville General Shopping Center, Inc.; Alice A. Boden, Trustee Under Will of Shelton B. Arterburn; Nancy A. Branch; and Phillip S. Arterburn, Appellees.

No. 96–CA–2135–MR.

Court of Appeals of Kentucky.

March 13, 1998.

John L. Tate, William H. Haden, Jr., Marjorie A. Farris, Louisville, for Appellants.

Sheryl G. Snyder, Rebecca A. Dernberger, Peter J. Stavros, Louisville, for Appellees.

Before ABRAMSON, BUCKINGHAM and EMBERTON, JJ.

## OPINION

BUCKINGHAM, Judge.

Bluegrass Manor Limited Partnership and its general partner, Plaza Centers, Inc., (Bluegrass Manor) appeal from a summary judgment granted by the Jefferson Circuit Court in favor of the Mall St. Matthews Limited Partnership and its general partner, Louisville Shopping Center, Inc., (the Mall), and Alice A. Boden, Nancy A. Branch, and Phillip S. Arterburn (the Arterburns). For the reasons set forth hereinafter, we affirm.

Both Bluegrass Manor and the Mall acquired 99–year leasehold interests in property located on the south side of Shelbyville Road in the City of St. Matthews (the City) from the Arterburns in the 1950's. Sherburn Lane, the subject matter of the present controversy, existed at the time both leaseholds were acquired but did not run between the two properties and connect with Shelbyville Road as it does today. In 1959, the Mall extended Sherburn Lane from south to north as a private road along the western border of its leasehold, thus connecting Sherburn Lane to Shelbyville Road. The Mall's extension of Sherburn Lane ran along the boundary between the two leaseholds, although the entire road was located on the Mall's leasehold. A long history of disputes concerning control and access of Sherburn Lane followed, beginning in 1966 when the Mall erected a fence blocking any access to Bluegrass Manor's property from Sherburn Lane as Bluegrass Manor was completing construction of its shopping center.

In 1973, the Mall agreed to remove the fence, and Bluegrass Manor was allowed a curb cut to Sherburn Lane. In July 1980, following a battle over annexation with the City, the Mall filed a plat purporting to dedicate Sherburn Lane as a public road.

The plat was filed with the City pursuant to Kentucky Revised Statute (KRS) 82.400, although the Mall shopping center and Sherburn Lane were not within the City's limits at that time.[1] The plat was not signed by the Arterburns, who deny authorizing the dedication.

In early 1994, the Mall was enlarged to include a Dillard's Department Store, and Sherburn Lane was widened and refurbished. Sherburn Lane remained parallel to and contiguous with Bluegrass Manor's property; however, the Mall's reconstruction eliminated a turn lane accessing Bluegrass Manor. In April 1994, the City passed an ordinance granting the Mall's petition to formally close and slightly reconfigure Sherburn Lane while keeping the closed road in continued use.

In May 1994, the City instituted an action in the Jefferson Circuit Court to close Sherburn Lane pursuant to the then-applicable version of KRS 82.405(1) and listed the Mall and the Arterburns as parties to the action. Bluegrass Manor was not named as a party, and it alleges that it had no notice or knowledge of the road closing until October 1994, when the Arterburns' attorney asked that Bluegrass Manor waive any leasehold interest that it might have in Sherburn Lane. The May 1994 agreed judgment closing Sherburn Lane provided in pertinent part:

> That the fee simple and leasehold ownership of the closed portion of Sherburn Lane revert to and hereby vest in the adjacent fee simple and leasehold owners on each side of the closed portion of the public way as set forth in City of St. Matthews Ordinance No. 94–02.

Bluegrass Manor subsequently filed a declaratory judgment action seeking a declaration of its legal rights in Sherburn Lane as an abutting leaseholder under the May 1994 road closing judgment. The trial court granted the Mall's summary judgment motion, holding that the 1980 dedication was not effective as a statutory dedication and that closure of the road triggered a "reversion" of

---

1. On November 17, 1980, approximately four months after the Mall filed the plat purportedly dedicating Sherburn Lane as a public road with

the City, the City annexed the property encompassing Sherburn Lane.

the Mall's leasehold interest. Bluegrass Manor then filed this appeal.

The trial court's judgment in favor of the Mall held that the 1980 attempted dedication of the roadway by recorded plat pursuant to KRS 82.400 did not constitute a valid statutory dedication but only the grant of a common-law easement. The court thus reasoned that the closing of the road had no effect on the title to the property but merely terminated the public's right of easement. The court also held that even if there was a valid statutory dedication in this case, the Mall would nonetheless retain a reversionary interest in the event the road was closed.

Bluegrass Manor contends that the trial court erred in determining that there was not a statutory dedication of Sherburn Lane. It notes that the Mall took all steps required by the provisions of KRS 82.400(1) which were in effect at that time, that the City approved the plat, and that it was recorded in the office of the county clerk.[2]

■ Statutory and common-law dedications are distinguished as follows:

A statutory dedication is a dedication made pursuant to the terms of a statute, and is almost universally created by the filing and recording of a plat. A common-law dedication requires an intention to dedicate expressed in some form, and an acceptance of the dedication by the proper public authorities, or by general public user. It is distinguishable from a statutory dedication, which is in the nature of a grant,.... Generally, a common-law dedication rests upon the doctrine of estoppel.

11A Eugene McQuillin, *The Law of Municipal Corporations* § 33.03 at 294 (3d ed. rev. 1991). There was no valid statutory dedication of Sherburn Lane by the Mall because the Mall was without the authority to dedicate property it did not own.[3] "The rule is that generally no one except the owner of an unlimited estate in fee can make a dedication of land." *Lexington–Fayette County Planning & Zoning Comm'n v. Levas,* Ky., 504 S.W.2d 685, 687 (1973), citing *McLean v. Thurman,* Ky., 273 S.W.2d 825 (1954). Furthermore, "[a] tenant may not make a dedication so as to bind the owner." *Levas, supra.* As the owners of the Sherburn Lane property, only the Arterburns could dedicate it as a public road, and they did not do so by formal dedication pursuant to the statute.

■ The trial court correctly held that there was a common-law dedication of Sherburn Lane. As the Arterburns acquiesced in the public's use of the road from the time the plat was filed in 1980 until the road was closed in 1994, there was a dedication by estoppel. *See* KRS 82.400(3); *Statewide Dev. Co. v. Lexington Fayette Urban County Gov't,* Ky.App., 821 S.W.2d 97, 100 (1991); *Freeman v. Dugger,* Ky., 286 S.W.2d 894, 897 (1956); *Whilden v. Compton,* Ky.App., 555 S.W.2d 272, 274 (1977); *City of Hazard v. Eversole,* 313 Ky. 254, 230 S.W.2d 921 (1950). Also, "an ineffectual attempt to make a statutory dedication may, when accepted by the public ... operate as a common-law dedication." 23 Am.Jur.2d *Dedication* § 40 at 37 (1983).

■ "[I]n a common-law dedication the fee does not pass to the public. Only an easement passes, subject to which the fee, of course, remains where it was before, in the dedicator, or proprietor." *Kreamer v. Harmon,* Ky., 336 S.W.2d 561, 563 (1960). Thus, when Sherburn Lane was closed, the public's easement right was extinguished and the ownership of the property remained with the Arterburns.

■ Citing *Potter v. Citation Coal Corp.,* Ky., 445 S.W.2d 128 (1969), Bluegrass Manor contends that land dedicated for a public road vests in the abutting property owners upon closure. It was held in that case that

---

2. Bluegrass Manor acknowledges in its supplemental brief that KRS 82.400, which relates to the dedication of a public way or easement in the city limits, was not applicable since Sherburn Lane was not in the city limits of the City of St. Matthews when the Mall filed the plat. KRS 100.111(22), KRS 100.277(1), and KRS 100.283 relate to dedicating a street in the county.

3. Since the Mall was without authority to dedicate the property, it could not dedicate the street under either the provisions of KRS 82.400 relating to streets in a city or KRS 100.11(22), KRS 100.277(1), and KRS 100.283 relating to streets in a county.

upon the abandonment of a public street, title vested in the abutting owners to the centerline of the road. *Id.* at 130. *Potter* is distinguishable from the case sub judice, however, since the dedication therein was a valid statutory dedication by recorded plat. As the title to the property in a common-law dedication remains in the owner, the closing of the road only terminates the easement that had been created. *Kreamer, supra.*

 Bluegrass Manor also argues that there was a statutory dedication of Sherburn Lane by the Arterburns, since the Mall was acting as their agent in making the dedication, even though the Arterburns did not execute any documents or participate in any of the proceedings which led to the filing of the plat in 1980. Bluegrass Manor relies on two provisions in the lease agreement between the Arterburns and the Mall which it claims require the Arterburns to agree to any dedication the Mall decided to make. However, our examination of these lease provisions reveals that they cannot be held as the basis for the Mall's acting as the Arterburns' agent in this case.[4] Although the Arterburns obviously made no objection to the acts of the Mall in its attempt at a statutory dedication, such acquiescence does not equate with a dedication by the Arterburns themselves.

Bluegrass Manor further argues that by the terms of the 1994 road closing judgment, it became the leasehold owner of the portion of Sherburn Lane abutting on its boundary and extending to the centerline. We disagree with Bluegrass Manor's argument as to the effect of this judgment, however. The judgment recited that the ownership and leasehold interests of the closed portion of Sherburn Lane would "revert" to the fee simple and leasehold owners on each side. As Bluegrass Manor was never the leasehold owner of any portion of Sherburn Lane, a leasehold interest could not legally revert to it. Rather, we construe the judgment to mean that the ownership and leasehold interests reverted to the original fee simple owners and the original leaseholder of this area—the Arterburns and the Mall. Although the reference to the fee simple and leasehold owners "on each side" of the closed portion creates some confusion, we conclude that this language refers to the Arterburns, who originally owned the land including and adjoining on both sides of the closed portion of Sherburn Lane, and to the Mall, which originally owned the leasehold of the entire closed portion of Sherburn Lane.

Bluegrass Manor's next argument is that the Mall relinquished its leasehold interest in the property when it signed the certificate of ownership and dedication. This argument is likewise without merit as only the owner of the fee can dedicate the property. *Levas, supra.*

The final argument raised by Bluegrass Manor is that the trial court erred in holding that even if there was a valid statutory dedication, the Mall would retain a reversionary interest in the event the road closed. This argument is moot since we have held that there was only a common-law dedication. The property did not "revert" to anyone upon closure of the road; the public's easement was merely extinguished.

The judgment of the Jefferson Circuit Court is affirmed.

All concur.

---

4.  One provision required the Arterburns to agree to any needed utility easements and the other mandated that the Arterburns agree to any dedication required by public authorities. Clearly, the 1980 attempted dedication was neither required by the City nor did it involve the granting of utility easements.