RENDERED: DECEMBER 14, 2017
TO BE PUBLISHED

# Supreme Court of Kentucky

## 2016-SC-000513-DG

WILLIAM DAVID ELLINGTON
AND JANE ELLINGTON

APPELLANTS

ON REVIEW FROM COURT OF APPEALS
CASE NO. 2014-CA-001214
V.
BATH CIRCUIT COURT NO. 10-CI-90020

HARLAN RANDALL BECRAFT; DONNA
MICHELE BECRAFT; HENRY LEROY
ANDERSON; BONNIE B. ANDERSON;
UNKNOWN HEIRS OF EWELL GORDON
BAILEY; BRITNEY BAILEY; DUSTIN
BAILEY; ELEANOR W. BAILEY; KAREN
BAILEY HART; DANNY HART; ADDISON
BAILEY; LESLIE SPARKS; AND BATH
COUNTY, KENTUCKY

APPELLEES

**OPINION OF THE COURT BY JUSTICE KELLER**

**AFFIRMING IN PART AND REVERSING IN PART**

Plaintiff, Ellington, filed a complaint and petition for declaration of rights

against Defendant, Becraft, and other parties in Bath County regarding a

passway known as Smokey Hollow Road. Ellington asked that this road be

recognized as a county road, public passway, or easement. The case was tried before the Court, without a jury, and the Court entered judgment against the Defendant, finding that Smokey Hollow Road was a county road, a public passway, and that Ellington had acquired an easement by prescription. The Court of Appeals reversed, holding that Ellington had failed to meet his burden in proving the existence of any county road, public passway, or easement. Ellington then sought review from this Court. For the reasons discussed herein, we affirm in part, although on different grounds, and reverse in part the opinion of the Court of Appeals.

## I. BACKGROUND

William Ellington obtained full interest to his property on what is known as Smokey Hollow Road in Bath County in 1995. The property was initially purchased by his uncle in 1954, passed to his aunt and mother by will, and then passed partially to him by will after the passing of his mother and then he obtained full interest in the property by will after his aunt's death in 1995. As a child, he visited the property while his uncle owned it. He did not start visiting again after his uncle's death until he obtained full ownership in 1995. He visited the property one to two times a year until 2004. In 2004, Harlan Becraft purchased his property on Smokey Hollow Road and erected a gate across the road, limiting Ellington's access to his property. Ellington testified that, before Becraft erected the gate, he had never been denied access across the road by any other previous owner.

2

Ellington brought suit against Becraft in 2010 alleging that Becraft had no right to limit Ellington's access to this road. Ellington stated that Smokey Hollow Road was, in fact, a county road; in the alternative, Ellington alleged that Smokey Hollow Road was either a public road or passway, or that he had acquired an easement of some kind over the pathway.

The trial court entered findings of fact and conclusions of law finding that the road was a county road, public road, and easement by prescription. The Court of Appeals reversed on all findings, holding that Ellington had failed to meet his burden in proving Smokey Hollow Road was a county road, public road, or any kind of easement. Ellington then moved this Court for discretionary review, which we granted.

## II. STANDARD OF REVIEW

Under Kentucky Rule of Civil Procedure (CR) 52.01, "[i]n all actions tried upon the facts without a jury ... , the court shall find the facts specifically and state separately its conclusions of law thereon and render an appropriate judgment[.]" Upon review, "[f]indings of fact[] shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." CR 52.01.

Our first determination upon appeal, therefore, is to determine whether the trial court's findings of fact are clearly erroneous. *See id.* A trial court's findings are not clearly erroneous if they are supported by substantial evidence. *Moore v. Asente,* 110 S.W.3d 336, 354 (Ky. 2003). "'[S]ubstantial evidence' is '[e]vidence that a reasonable mind would accept as adequate to

3

support a conclusion' and evidence that, when 'taken alone or in the light of all the evidence, ... has sufficient probative value to induce conviction in the minds of reasonable men.'" *Id.* (quoting Black's Law Dictionary 580 (7th ed. 1999) and citing to *Kentucky State Racing Comm'n v. Fuller*, 481 S.W.2d 298, 308 (Ky. 1972) and *Blankenship v. Lloyd Blankenship Coal Co.*, 463 S.W.2d 62 (Ky. 1970)).

If the trial judge's findings are supported by substantial evidence, "then the appellate court's role is confined to determining whether those facts support the trial judge's legal conclusion." *Barber v. Bradley*, 505 S.W.3d 749, 754 (Ky. 2016) (quoting *Commonwealth v. Deloney*, 20 S.W.3d 471, 473-74 (Ky. 2000)). In this review of legal conclusions, we conduct a *de novo* review. *Barber*, 505 S.W.3d at 754 (citing *Sawyers v. Better*, 384 S.W.3d 107, 110 (Ky. 2012)).

## III.   ANALYSIS

### A. COUNTY ROAD

A county road, pursuant to Kentucky Revised Statute (KRS) 178.010 is a "public road[] which ha[s] been formally accepted by the fiscal court of the county as a part of the county road system, or private roads, streets, or highways which have been acquired by the county [by gift for public purposes] ... " "Since ... 1914, a formal order of the fiscal court has been required to establish a county road." *Kentucky Props. Holding LLC v. Sproul*, 507 S.W.3d 563, 569 (Ky. 2016) (citing *Sarver v. Allen Cnty.*, 582 S.W.2d 40, 41 (Ky. 1979) (citing *Rose v. Nolen*, 179 S.W. 229, 230 (Ky. 1915))).

4

A road can be deemed public without "automatically" being considered a "county road." *Sproul*, 507 S.W.3d a 569. In other words, a county road is a statutory creation, rather than an equitable one such as a public road or easement. This distinction is for the simple policy that "[a] county should not be held responsible for maintenance of a road which happens to become public through a process over which it has no control." *Cary v. Pulaski Cnty. Fiscal Court*, 420 S.W.3d 500, 508 (Ky. App. 2013) (citing *Sarver*, 582 S.W.2d at 41).

Both parties stipulated that the first one-tenth of a mile on Smokey Hollow Road, extending from Oakley Pebble Road, was a county road. However, the parties disputed that the road past that point was ever a county road as officially adopted by Bath County. The trial court relied upon testimony from witnesses regarding the use of the road; county maintenance of the road; and public and historical perception of the road to make its determination that Smokey Hollow Road is a county road. Our review on this issue is limited to the application of law and we therefore apply the *de novo* standard.

The trial court's legal analysis is more appropriate for the determination of whether a public road or passway was created by prescription. In contrast, the creation of a *county road* must be by formal acceptance of the county in which the road is located. We accept that the initial one-tenth portion of the road from Oakley Pebble Road is a county road, as stipulated by the parties. And if the extent of Ellington's case was limited to that portion of Smokey

5

Hollow Road, then the stipulation would have been sufficient to meet Ellington's burden in establishing a county road.

However, Ellington alleged that Smokey Hollow Road extended all the way back across the Becraft property, further than agreed and stipulated by the parties. The Court of Appeals correctly noted that its analysis was limited to the disputed portion of the road. Thus, Ellington had the burden of proving the existence of a county road for the entire length that he alleged. He failed to provide any *formal* or *official* notice or proof that Bath County had ever adopted the entirety of Smokey Hollow Road as a county road. Simply because part of a pathway is a county road does not automatically lead to the conclusion that the entire passage is, or ever was, a county road.

A county road must be proven by such formal or official action of the county; "before a road open to the public shall be recognized as a county road, it must have been established by order of court." *Illinois Cent. R. Co. v. Hopkins Cnty.*, 369 S.W.2d 116, 117 (Ky. 1963) (citing *Rose*, 179 S.W. 229). Although other potential rights of passage may be created without such formal action, as will be discussed herein, a county road is a county creation and must be proven as such. [1] Therefore, Ellington's claim must fail and the trial court erred in finding the existence of a county road.

---

[1] We note that Ellington and the trial court considered Bath County's failure to respond to any complaint as acceptance that Smokey Hollow Road is a county road as a matter of law. Although Ellington may have been entitled to default judgment against the non-responding party, that does not estop Becraft from asserting defenses against the same claims affecting his property. In fact, "if either of the defendants [in a case against multiple defendants] should, in a joint or separate answer, rely upon a defense which goes to the entire merits of the action ... a judgment cannot be rendered

Additionally, the trial court's reliance upon KRS 178.070 regarding discontinuance of a county road is also misplaced. Ellington failed to prove there was ever a county road beyond the stipulated one-tenth of a mile. Thus, discontinuance of a county road was irrelevant because there was no proof there was ever a county road to discontinue. On this issue, we therefore affirm the Court of Appeals holding that the passway over the Becraft property is not a county road as a matter of law.

## B. PUBLIC ROAD

"[A] general and long-continued use of a passway by the public as a right will create the right to continue the use and the owner of the land traversed by the passway who allows the public to use it as a highway for a long period of years under a claim of right will be estopped from denying a dedication to the public." *Gardner v. Hope*, 58 S.W.2d 353, 354 (Ky. 1933). The key to establishment of a public road, therefore, is an implied or express dedication of that road to the public's use. Dedication of a public passway can be completed either through statutory, formal means (KRS 82.400 or KRS 178.025) or through common law informal means. The parties in this case never pleaded

---

against any of the defendants until that plea is disposed of; and if that defendant should succeed upon such a plea, the action must be dismissed as to all of the joint defendants." *Tackett v. Green*, 218 S.W. 468, 469 (Ky. 1920) (quoting Newman's Pleading and Practice § 439). As such, at the time of trial, prior to any separate or final judgments against other parties, there was no preclusive effect to the failure to answer. Thus, the trial court and appellate courts upon review must examine the merits of the case presented by the parties rather than simply accept what was not presented by a separate defendant.

that there had been a formal dedication so the common law of informal dedication applies.

Informal dedication can be completed through two theories: dedication by estoppel or dedication by prescription. "[D]edication by estoppel ... does not have set time limits, but is based on promises and reliance thereon." *Nash v. Campbell Cnty. Fiscal Court*, 345 S.W.3d 811, 819 (Ky. 2011) (citing KRS 82.400(3); *Bluegrass Manor v. Mall St. Matthews Ltd. P'ship*, 964 S.W.2d 431, 433 (Ky. App. 1998); *Henry Fischer Builder, Inc. v. Magee*, 957 S.W.2d 303, 306 (Ky. App. 1997)). In contrast, "dedication by prescription holds that the long continued use of a highway by the general public rests upon a presumption of a lost grant, arising from the continuous adverse use of land (with the same elements of adverse possession)." *Nash*, 345 S.W.3d at 819 (citing 2 American Law of Property § 9.50(c) at 483; *Louisville & N.R. Co. v. Engle*, 129 S.W.2d 133, 134 (Ky. 1939)). The Court of Appeals here, however, found that dedication by estoppel required continuous and substantial use by the public for a long duration of time so as to imply intent to dedicate. In addition, the Court of Appeals held that dedication by prescription required public use that was continuous, actual, open, and hostile for 15 years *and* county control for 15 years.

Thus, the issue before this Court raises several clashes among this Commonwealth's jurisprudence. There are three main issues we must conclusively decide to bring clarity to the situation: (1) does informal dedication, either by prescription or estoppel, of a public road require county

8

control; (2) what is the requirement for dedication by estoppel; and (3) does dedication by prescription require adverse use?

### *Informal Dedication of a Public Road Does Not Require County Control*

According to the Restatement (Third) of Property, a servitude can be created for the benefit of the public. Restatement (Third) of Property § 2.18 cmt. d (Am. Law Inst. 2000). These servitudes are created through dedication. *Id.* "[D]edication may take place without the participation of any governmental body or other identified party other than the dedicator." *Id.* Rather than relying upon any kind of county or government control, "[d]edication requires an offer by the owner of the land and acceptance by the *public.*" Restatement (Third) of Property § 2.18 cmt. e (Am. Law Inst. 2000) (emphasis added).

This Court's predecessor made holdings consistent with the Restatement as indicated. In *Freeman v. Dugger*, the Court clearly held that "formal acceptance by public officials [is not] necessary to complete the dedication." 286 S.W.2d 894, 897 (Ky. 1956) (citing *Riley v. Buchanan*, 76 S.W. 527 (Ky. 1903)). Instead, "[t]he question is ... one of reliance by the *public* on appearances created by the landowner." *Freeman*, 286 S.W.2d at 896 (emphasis added). In *Riley v. Buchanan*, the Court delved into whether long-continued use could, on its own, be sufficient to imply acceptance of a dedication. 76 S.W. at 528-30. "That the public officials ... should have it in their exclusive power to deny the public the right to accept the road by merely neglecting to provide for its maintenance ... is not reasonable." *Id.* at 530. This distinction makes even more sense when the Court considers the various

9

requirements and responsibilities involved with county roads, statutory public roads, and common law public roads. Counties may officially act to adopt county and public roads. But the public may still acquire rights of passage without any involvement from public officials.

However, this principle has been muddied by more recent case law. In *Watson v. Crittenden Cnty. Fiscal Court*, the Court of Appeals held that "a public road may be acquired by prescription only upon (1) fifteen years public use and (2) a like number of years of control and maintenance by the government." 771 S.W.2d 47, 48 (Ky. App. 1989). The Court cited to *Louisville & Nashville R.R. Co. v. Whittle's Adm'rs*, in which the Court held that public "use, without the exercise of any power over the road by the county court, will not make it a public highway." 287 S.W. 894, 895 (Ky. 1926) (internal citations and emphasis omitted). That Court, in turn, cited to several cases for the preceding proposition, all from 1920 and earlier.

And thus begins a clear conflict among our case law that we must now resolve. To resolve this conflict, we find the reasoning of *Freeman* and *Riley* most compelling. In more modern history, our legislature has seen fit to allow multiple avenues for county officials to take steps to create formal county and public roads. There are formal processes for these steps to take place. However, we agree with the *Riley* court: an official's refusal to maintain an area of road should not prevent the public from ever acquiring rights to a passage that may be necessary for the public's full enjoyment of their town. The county has its methods for obtaining roads and pathways; the public should

10

also have its own opportunities for obtaining such rights. Thus, we hold that county control is *not* necessary to establish a common law public road. Instead, the question is one of fact: whether the public has acquired and accepted a dedication by estoppel or prescription, neither of which *must* be proven by county control. County control can be evidence of a public acceptance; but it is not necessary to prove that acceptance or dedication.

To the extent any prior case law conflicts with this holding, we now overturn those holdings and stand true to the principle that public roads can be created without proving county control for any period of time. This holding also comports with this Court's holdings, and this Court's predecessor's holdings, in *Riley, Freeman, Sarver*, and *Sproul.* The reasoning is consistent: our General Assembly has created formal processes by which county governments can obtain property rights. Common law still retains powers through which the public itself can obtain rights to passways, without any interference or involvement from government officials.

### Dedication by Estoppel Requires a Promise and Reliance Thereon

In *Nash,* this Court stated that "dedication by estoppel ... does not have set time limits, but is based on promises and reliance thereon." *Nash,* 345 S.W.3d at 819 (citing KRS 82.400(3); *Bluegrass Manor,* 964 S.W.2d at 433; *Henry Fischer Builder, Inc.,* 957 S.W.2d at 306)). "[D]edication by estoppel ... involves promises and justified contractual reliance thereon." *Henry Fischer Builder, Inc.,* 957 S.W.2d at 306.

11

In the case *sub judice*, the Court of Appeals reversed a finding of a public road, relying upon *Freeman v. Dugger*. The Court held that "[a] public road is dedicated by estoppel when the public continuously and substantially uses the road for a long duration so as to evidence the landowner's intent to dedicate such road." The Court relied upon the language in *Freeman* that a landowner who allows long-continued use by the public "will be estopped from denying a dedication to the public." *Freeman*, 286 S.W.2d at 896 (quoting *Gardner*, 58 S.W.2d at 453). Although the Court utilized the language of estoppel, this description instead refers to the method of prescription by which the public can obtain property interest in a passway.

It seems our courts have struggled in distinguishing these oft-intertwined and confusing concepts, thus leading to inconsistent and sometimes conflicting results. We now clarify: dedication by estoppel requires a promise from the landowner, either express or implied, and a reliance thereon by the public. We cannot enumerate all the ways by which a plaintiff could prove this promise and reliance. What may prove dedication by estoppel may also prove dedication by prescription. These concepts often conflagrate and obfuscate – however, this Court must remain true to the underlying principles. Here, dedication by estoppel relies upon the theory of estoppel itself. A promise and the public's reliance upon that promise estops the landowner from asserting his private interest rights as dominant to that of the interest created in the public.

12

### Dedication by Prescription Requires Adverse Use

In *Nash*, this Court stated that "dedication by prescription holds that the long continued use of a highway by the general public rests upon a presumption of a lost grant, arising from the continuous *adverse* use of land (with the same elements of adverse possession)." *Nash*, 345 S.W.3d at 819 (citing 2 American Law of Property § 9.50(c) at 483; *Engle*, 129 S.W.2d at 134) (emphasis added). This case refers to the lost-grant theory. "Under this theory, long-continued use or possession can raise a presumption that the right exercised was previously conveyed to the user or possessor and that the instrument of conveyance has been lost." Jerome J. Curtis, Jr., *Reviving the Lost Grant*, 23 Real Prop. Prob. & Tr. J. 535, 535 (1988). Per the Restatement, this idea arose in property law "that long-continued use or possession is evidence of an entitlement created in the past, which evolved into the lost-grant fiction of English and American law." Restatement (Third) of Property § 2.17 cmt. b (Am. Law Inst. 2000). However, "[i]n the 20th century, American courts ... largely discarded lost-grant theory. In its place, they have substituted a combination of statute-of-limitations and acquisitive-prescription theories." *Id.* Rather than requiring fully adverse use,[2] under this combination of theories,

---

[2] There are five elements which must be met in order to make a claim of title through adverse possession: "1) possession must be hostile and under a claim of right, 2) it must be actual, 3) it must be exclusive, 4) it must be continuous, and 5) it must be open and notorious." *Moore v. Stills*, 307 S.W.3d 71, 77 (Ky. 2010) (quoting *Appalachian Reg'l Healthcare, Inc. v. Royal Crown Bottling Co., Inc.*, 824 S.W.2d 878, 880 (Ky. 1992) (citing *Tartar v. Tucker*, 280 S.W.2d 150, 152 (Ky. 1955)). The elements "must all be maintained for the statutory period of fifteen years, and it is the claimant's burden to prove them by clear and convincing evidence." *Moore*, 307 S.W.3d at 77-78 (citing *Commonwealth Dept. of Parks v. Stephens*, 407 S.W.2d 711

13

"[m]odern American prescription doctrine requires only that a prescriptive use be maintained in a manner that is open or notorious and be continued without effective interruption for the prescriptive period." Restatement (Third) of Property § 2.17 cmt. g (Am. Law Inst. 2000).

The notorious and open requirement under the prescriptive doctrine offers a simple purpose: "to give the owner of the servient estate ample opportunity to protect against the establishment of prescriptive rights." Restatement (Third) of Property § 2.17 cmt. h (Am. Law Inst. 2000). Additionally, the continuous element also supports a general principle and policy: "adverse possession must be *continuous* to oust the true owner; otherwise, the latter's constructive possession reasserts itself whenever the disseizor abandons his occupancy even for a short period of time." *Thompson v. Ratcliff*, 245 S.W.2d 592, 592-93 (Ky. 1952) (emphasis original).

This Court's more recent trend, however, is contrary to the more lenient requirements proposed by the Restatement. This Court has held that acquiring a private easement by prescription must meet *all* the elements of adverse possession. *Columbia Gas Transmission Corp. v. Consol of Kentucky, Inc.*, 15 S.W.3d 727, 730 (Ky. 2000) (internal citations omitted). "[A] prescriptive easement can be acquired by actual, hostile, open and notorious, exclusive, and continuous possession of the property for the statutory period of fifteen years." *Id.* (internal citations omitted). Even further, our case law has

_____

(Ky. 1996) and *Flinn v. Blakeman*, 71 S.W.2d 961 (Ky. 1934) (overruled in part by *Warfield Natural Gas Co. v. Ward*, 149 S.W.2d 705 (Ky. 1940))).

14

previously stated that "[i]n order to establish that the passway had ripened into a private or a public way, plaintiff must show it was used *adversely* by him or his predecessors in title or by the public generally in an open[,] continuous[,] and uninterrupted manner for 15 years." *Rominger v. City Realty Co.*, 324 S.W.2d 806, 808 (Ky. 1959) (citations omitted) (emphasis added).

The Restatement position is strictly contrary to this Court's statements in the previously cited cases that all the elements of adverse possession must be met to establish a public road through prescriptive dedication. Although the modern position on the requirements for prescriptive acquisition of property rights are persuasive, we also find our Court's jurisprudence compelling. Finding the language of *Nash* and *Rominger,* and this Court's treatment of adverse possession and prescriptive rights generally indicative, and in an effort to be consistent with our interpretation of law, we hold that the public must *adversely* possess the property in question before acquiring an interest in a public road or passway. Thus, all the elements of adverse possession must be satisfied before a public road will be considered established.

Our position is stricter than that of the Restatement. However, we believe this is consistent with this Court's and this Commonwealth's position on property rights. "[P]rivate property is too sacred and the rights of citizens are too well guarded under our constitutional form of government to be sacrificed at the public behests without compensation." *Elizabethtown, Lexington & B.S.R. Co. v. Combs*, 73 Ky. 382, 389 (Ky. 1874) (quoting *City of Louisville v. Louisville Rolling Mill Co.*, 66 Ky. 416, 430 (Ky. 1867)). The Court

15

further recognized "that fundamental maxim of a free government which requires that the right to private property should be held sacred." *Combs*, 73 Ky. at 392. While these statements were made in the context of eminent domain questions, we recognize the inherent sanctity of property rights within this Commonwealth. The Kentucky Constitution expressly guarantees "[t]he right of acquiring and protecting property." KY. Const. § 1. Thus, we see no reason to depart from this fundamental belief and create a more lenient process through which property owners could lose rights to their own privately held property.

As stated in previous law and consistent with our jurisprudence on adverse possession and private easements by prescription, the prescriptive period is fifteen years and all the elements of adverse possession must be met for these fifteen years.

Thus, in summary, the general public can obtain property interests through dedication of pathways and roads without formal or informal county action. The public can create a public road and property interest therein through two methods: dedication by estoppel and dedication by prescription. Dedication by estoppel does not require a set amount of time but instead involves promises and a distinct reliance thereon, estopping the landowner from denying the public use of the road. Dedication by prescription requires adverse use for the statutory period of fifteen years.

Having set forth some clarification on the law surrounding informal dedication of a public road, we must now assess whether the trial court

16

correctly determined that Smokey Hollow Road was a public road. In order to review the trial court's determination, we must first examine whether its findings of fact were clearly erroneous. If they are not clearly erroneous, we will then review the legal conclusion *de novo*.

### *The Trial Court's Findings and Conclusion of Law*

The trial court determined:

> The road involved in this action has been marked and identified as running from and connecting Oakley-Pebble Road through the property now owned by the Bailey family, through the property now owned by the Becraft/Anderson Defendants and through the property now owned by the Ellingtons to the White Oak Turnpike, now known as White Oak Road since at least 1884. Smokey Hollow Road is still shown on maps sold to the public showing the roads in Bath County as well.

Additionally, in reviewing witness testimony, the trial court found:

> David Ellington testified about use of the road by the public during the 1950s when his family first purchased the property. James Reed, a witness not related to any of the interested parties, testified about the use of the road by the public during the 1960s and the 1970s. Mr. Reed discussed his and his father's use of the road to get to and from the Crain farm and to drive cattle on and off the property. He discussed the use of the road by specific members of the public, including but not limited to Dayton (Doc) Denton, Franklin and Addie Vice and Holman Stewart, to get to residences in which they lived along the road in the question.
>
> Officials from the County, such as Tom Warren from the Bath County Road Department, also testified about the use of Smokey Hollow Road through the years by buses from the Bath County School System, well into the property now owned by the Becraft/Anderson Defendants.

Based on these facts, the trial court found that the road was a public passway.

### Reversal by the Court of Appeals

On appeal, the Court of Appeals reversed the finding of a public road by the trial court. The Court stated that "there was no evidence introduced that the alleged passway running through Becraft's property was controlled and maintained by Bath County for a period of fifteen years." The Court of Appeals determined that 'the Ellingtons failed to demonstrate that Bath County continuously for a period of fifteen years maintained the alleged passway over the Becraft property." Thus, "[i]n the absence of such evidence, [the Court of Appeals] conclude[d] the alleged passway upon the Becraft property was not a public road acquired through prescription as a matter of law."

The Court also determined that Ellington failed to provide evidence sufficient to find dedication of a public road by estoppel. The Court of Appeals determined the evidence presented to the trial court merely showed permissive use by "adjoining tenants or landowners." The Court of Appeals held that "the evidence overwhelmingly demonstrates that no passway is physically present over ... the Becraft property ... capable of providing vehicular access to the Ellingtons' property." The Court of Appeals "[did] not believe the facts indicate[d] a clear intent by Becraft or his predecessors in title to abandon their interest in the alleged passway and dedicate it to public use."

### The Trial Court's Findings of Fact Were Not Clearly Erroneous

After our review of the record, we cannot conclude that the trial court's findings of fact are clearly erroneous. "[S]imple doubt as to the appropriateness of a finding will not justify its reversal." *Sproul*, 507 S.W.3d at

18

569 (citing *D.G.R. v. Commonwealth, Cabinet for Health & Family Servs.*, 364 S.W.3d 106, 114 (Ky. 2012) (internal citations omitted)). Instead, if the findings are supported by "[e]vidence that a reasonable mind would accept as adequate to support a conclusion," then the appellate court cannot set aside those findings. *Vinson v. Sorrell*, 136 S.W.3d 465, 470 (Ky. 2004) (internal citations omitted). Given this standard, we hold that the trial court's findings of fact are supported by substantial evidence in the record, based on exhibits and witness testimony. There was no clear error in any of the court's interpretations or impressions of witness testimony. There was evidence to support his findings. It is not an appellate court's position to review facts and substitute its own determinations for that of the trial court. The trial court is due deference in its judgment of credibility and role of truth-finding. We must now, however, determine *de novo* whether these findings support the legal conclusion reached by the trial court.

### Ellington Failed to Establish Evidence of a Public Road

The issue before us is whether, as a matter of law, the trial court's findings of facts are sufficient to establish an implied dedication of this portion of Smokey Hollow Road to create a public road. As stated, this implied dedication could be by estoppel, requiring proof of promise and reliance. Neither the parties nor the trial court in this case made any mention of promises or reliance and none of the proof presented applied to these legal concepts. As such, the only alternative method of dedication would be by prescription. Evidence of this dedication can vary. But, as we have stated, the

19

plaintiff's proof must be sufficient to establish adverse use of the road by the public for the statutory period of fifteen years. After careful review of the trial court's findings and the record, we hold that the evidence presented by the plaintiff was insufficient to meet this burden.

Adverse possession requires a showing that possession is: (1) hostile "under a claim of right"; (2) actual; (3) exclusive;[3] (4) continuous; and (5) open and notorious. *See Moore*, 307 S.W.3d at 77 (quoting *Appalachian Reg'l Healthcare, Inc.*, 824 S.W.2d at 880 (citing *Tartar*, 280 S.W.2d at 152)). "[I]t is the claimant's burden to prove [these elements] by clear and convincing evidence." *Moore*, 307 S.W.3d at 77-78. Like prescriptive easements, "[t]he acts necessary to acquire [a public road] by prescription depend on the nature of the interest to be possessed." *See Columbia Gas Transmission Corp.*, 15 S.W.3d at 730.

We are unpersuaded that the use here was sufficient to establish, as a matter of law, an actual use by the *public*. "[O]ne of the essentials of the establishment of a road by prescription is the use of the land in question by the public and such use must be by the public generally as a way common to all." *Rominger*, 324 S.W.2d at 808. "[T]he mere use by a few individuals from time to time, as distinguished from the public generally, does not constitute such

---

[3] While the element of exclusivity may seem impossible in the context of the general public, we simply note: the exclusivity elements "means that [the property] must not be shared with the disseised owner. Two or more persons may be coadverse possessors ..." Elements—Exclusive, 3A Ky. Prac. Real Estate Transactions § 19:5. While this element may be more difficult to prove in these cases, it is possible for the general public at large to, as a group, adversely and exclusively possess rights to a passage on private property.

use as creates title in the public by prescription." *Id.* Here, every witness testified as to use by a few individuals once to twice a year for a few years here and there. The trial court literally listed use by only five specific individuals, which was found to constitute "public" use. The only general use found by the trial court was acknowledgement of the road in atlases. But we have to emphasize that the use by the public must be *actual* and not just theoretical.

The evidence was insufficient to show a use by the general public for the proper prescriptive period. The use of this passage was only for the purpose of reaching the Ellington property; it was hardly a necessary passage for the community at large. Instead, it was limited to those few members of the public (rather than the general public at large) using the path to reach the homes located along what was known as Smokey Hollow Road. This is insufficient as a matter of law to constitute actual use by the public to create a public road. An additional problem arises with the prescriptive period as James Reed testified that the specific use he referred to, in pasturing cattle, occurred for about five to six years, albeit in the 1960s and 1970s. There was no actual evidence of a timeline, proving adverse, actual use, by the public continuously, for the full fifteen years required.

Given the facts as heard by the trial court, the record before us, and our *de novo* review of the law, we must hold that the evidence presented, as a matter of law, was insufficient to establish a public road. Thus, we affirm this portion of the holding of the Court of Appeals, although on different grounds.

21

## C. EASEMENT BY PRESCRIPTION

The trial court found that Ellington had established a prescriptive easement over Becraft's property. Likewise, the Court of Appeals held that this prescriptive easement had been created but had been abandoned. Once again, we review the trial court's findings of fact for clear error and the legal conclusions under a *de novo* standard.

### *The Trial Court's Findings and Conclusion of Law*

The trial court made the following findings, based upon the evidence and testimony presented to it at trial:

> David Ellington['s family acquired the property] ... in 1954 and ... [Ellington] personally visited the property at that time and used the route from Oakley Pebble Road to the property then owned by his uncle. Mr. Ellington testified about the farming that occurred on the property throughout several decades where all those tending the cattle would access the property from Oakley Pebble Road via the road involved in this action across the property now owned by the Baileys and the property now owned by Becraft/Anderson Defendants. He testified about cattle being brought in and out along such route. He testified that no one asked for permission to use that route due to the fact that people had always known or assumed they had the right to do so and that no one who previously owned the property now owned by the Bailey family or the property now owned by the Becraft/Anderson Defendants ever tried to stop anyone from using that route ... [James Reed] testified about he and his father working the cattle on the farm owned by Hubert Crain, David Ellington's uncle and a predecessor in interest. Mr. Reed testified about using the route across the property now owned by the Bailey family and the property now owned by the Becraft/Anderson Defendants to not only gain access to the farm and to the cattle themselves but also to bring cattle onto and take cattle off of the property. He also testified about how other predecessors in interest lived on the property in question and gained access to their residences using the road across the

22

property now owned by the Bailey family and the property now owned by the Becraft/Anderson Defendants, including Dayton "Doc" Denton, Franklin and Addie Vice and Holman Stewart.

From these facts, the trial court determined that the use of the road by Ellington and his predecessors in interest was actual, hostile, open and notorious, and continuous. The court found that these findings were sufficient to create a prescriptive easement across the Becraft property. The court also noted that Becraft offered no evidence to contradict the use of the road in the time periods discussed. The trial court also found that although Becraft's gate blocked access to this path beginning in 2004, that block was insufficient to extinguish any prescriptive easement as it had been there for less than the required 15 years.

### Reversal by the Court of Appeals

The Court of Appeals reversed the trial court's findings on this issue as well, holding that there had been a prescriptive easement but it had been abandoned. The Court held that "[t]here was sufficient evidence that the Ellingtons and the Ellingtons' predecessors in title utilized the passway running through the Becraft property in an actual, open, notorious, and hostile manner for a period of fifteen years." The Court of Appeals, however, inferred an intent to abandon from the Ellingtons' "nonuse of the right-of-way for some six years [and] also by the physical nonexistence of the right-of-way over the southwestern portion of the Becraft property." The Court held that this evidenced abandonment of the easement and extinguished any rights the Ellingtons had acquired in the passway. Judge Debra Lambert dissented from

23

this portion of the opinion, stating that she would have found the easement had not been abandoned and would have affirmed the trial court.

### *The Trial Court's Findings Were Not Clearly Erroneous*

A trial court's "findings of fact are clearly erroneous only if they are manifestly against the weight of the evidence." *Frances v. Frances*, 266 S.W.3d 754, 756 (Ky. 2008) (citing *Wells v. Wells*, 412 S.W.2d 568, 571 (Ky. 1967)). In other words, an "appellate court may determine that findings are clearly erroneous if they are without adequate evidentiary support ... " *Rogers v. Lexington-Fayette Urban County Gov't*, 175 S.W.3d 569, 571 (Ky. 2005) (citing *Oakwood Mobile Homes, Inc. v. Sprowls*, 82 S.W.3d 193 (Ky. 2002)). After review of the trial court's findings and the record before us, we find no clear error in the trial court's findings of fact. The findings were supported by the testimony of Ellington, James Reed, and the exhibits presented by both parties. As such, we now examine the court's conclusions of law *de novo*.

### *Ellington Had a Prescriptive Easement Over the Becraft Property and It Has Not Been Abandoned*

"The right to acquire an easement by prescription is of ancient origin and is grounded in the common law." *Columbia Gas Transmission Corp.*, 15 S.W.3d at 730 (citing *Hall v. McLeod*, 59 Ky. 98 (Ky. 1859)). "As with adverse possession of a fee simple estate, a prescriptive easement can be acquired by actual, hostile, open and notorious, exclusive, and continuous possession of the property for the statutory period of fifteen years." *Columbia Gas Transmission Corp.*, 15 S.W.3d at 730 (citing KRS 413.010; *Riggs v. Ketner*, 187

24

S.W.2d 287 (Ky. 1945); *Riley v. Jones*, 174 S.W.2d 530, 531-32 (Ky. 1943); *Pickel v. Cornett*, 147 S.W.2d 381, 382 (Ky. 1941).

The trial court found the facts sufficient to establish that these elements had been met to create a prescriptive easement. The Court of Appeals, likewise, affirmed this portion of the trial court's order. We now hold that both courts were correct, and the evidence was sufficient to prove that a prescriptive easement was created for the benefit of Ellington over Becraft's property. The evidence presented to the court was sufficient to establish Ellington, and Ellington's predecessors-in-interest, had used Smokey Hollow Road over the Becraft property in a hostile, open and notorious, exclusive, and continuous manner for at least fifteen years. Several witnesses testified of Ellington's use of the passway for moving cattle, without any permission from the landowner.

Additionally, even though Ellington expressed that his use of the passway was limited to one to two times a year, this is sufficient to create continuous use. "[C]ontinuous occupancy did not require that any person need live on the land. The important consideration is whether or not the physical use of the property by the owner or his representative ... demonstrates that he is asserting dominion over the property." *Ratcliff*, 245 S.W.2d at 593 (citing *Combs v. Ezell*, 24 S.W.2d 301 (Ky. 1930)). This explanation also must be distinguished by the context here of an *easement* rather than adverse possession. A disseizor by adverse possession can acquire full title to property whereas the user of a prescriptive easement can only acquire the right to use. *See Lyle v. Holman*, 238 S.W.2d 157, 159-160 (Ky. 1951). Thus, while adverse

25

possession looks to meeting the elements through possession, it would be more apt to recognize that a prescriptive easement is created through use of the passway in the necessary way. Ellington's *use* here was continuous enough to meet this element. But, it also leads to the limitation of this particular property interest.

"[A]n easement is property of the nature of the land, it is an incorporeal right. ... When acquired by prescription it may be conditional and restricted according to the use and purpose of its enjoyment during the prescriptive period." *Id.* at 159. An easement created through prescriptive use is limited to the use during the prescriptive period. The easement "will not ripen into a greater estate after the period of limitation has passed." *Id.* This Court's predecessor has cited that use of a path as a fire exit can ripen into a prescriptive easement for the purpose of being a fire exit. *Id.* at 159-60 (citing *Ben Snyder, Inc. v. Phoenix Amusement Co.*, 218 S.W.2d 62, 64 (Ky. 1949)). Thus, an easement must be "defined in conformity with the nature of its use." *Lyle*, 238 S.W.2d at 160. Therefore, Ellington's easement across Becraft's property is limited to the use found by the trial court during the prescriptive period, which was only ingress and egress. The path was never paved or constructed for other purposes and we see no facts discerning the necessity for expanding the use of the easement further than Ellington's prior use.

The Court of Appeals held that Ellington's non-use of the easement after Becraft erected a gate in 2004 was sufficient to evidence abandonment of the easement. However, this holding is contrary to the law. "[A]n easement

26

acquired by prescription may be extinguished by a nonuser under circumstances indicating an intention of abandonment whenever such nonuser has extended over that period of time sufficient to have created the prescriptive right at its origin." *Jones v. Dunn,* 205 S.W.2d 156, 157 (Ky. 1947) (citing *Childers v. Burger,* 21 S.W.2d 805 (Ky. 1929); *City of Harrodsburg v. Cunningham,* 184 S.W.2d 357 (Ky. 1944)). The prescriptive period here is fifteen years; thus, non-use of the easement could only establish an intent to abandon after *fifteen years* of non-use. In this aspect, the Court of Appeals majority opinion was flawed and we reverse its holding.

We find Becraft's evidence of the non-use of the passway compelling; the photographic evidence clearly shows an overgrown and vegetated path. However, this Court is not in a position to undermine findings of fact by the trial court or supplement its own judgment where evidence is lacking. Becraft did not present sufficient evidence to show non-use for the required fifteen years in order to prove abandonment of this easement. As such, we must reverse the Court of Appeals and reinstate the order of the trial court holding that Ellington has acquired a prescriptive easement over the portion of Smokey Hollow Road across Becraft's property.

## IV. CONCLUSION

After careful review of the law, the trial court's order, and the law of our Court, we make several general holdings today. First, a county road can be established only through formal action of the county. Second, a public road can be established by informal dedication through estoppel or prescription

27

without any action of county officials. Dedication by estoppel requires a promise and reliance thereon while prescriptive dedication requires adverse use by the public for the statutory period. To this case specifically, we hold that the evidence was insufficient to find a county road or public road. On those issues, we affirm the Court of Appeals, although for different reasons. We hold, however, that the evidence was sufficient to find a prescriptive easement and that said easement had not been abandoned for the requisite statutory period. On this issue, we reverse the Court of Appeals and reinstate the order of the trial court.

All sitting. Minton, Hughes, Keller, VanMeter and Venters, JJ., concur. Cunningham and Wright, JJ., concur in result only without opinion.

COUNSEL FOR APPELLANTS:

Stephen Edward Neal
White, Peck, Carrington, LLP

COUNSEL FOR APPELLEE, HARLAN RANDALL BECRAFT:

Leah Nell Hawkins

COUNSEL FOR APPELLEE, BATH COUNTY, KENTUCKY:

Kimberly S H Price

COUNSEL FOR APPELLEE, UNKNOWN HEIRS OF EWELL GORDON BAILEY:

Julie Diane S Williamson
Hughes Letcher Williamson PSC

COUNSEL FOR APPELLEE, DONNA MICHELE BECRAFT:

Donna Michele Becraft, *Pro Se*

COUNSEL FOR APPELLEE, HENRY LEROY ANDERSON:

Henry Leroy Anderson, *Pro Se*

COUNSEL FOR APPELLEE, BONNIE B. ANDERSON:

Bonnie B. Anderson, *Pro Se*

COUNSEL FOR APPELLEE, BRITNEY BAILEY:

Britney Bailey, *Pro Se*

COUNSEL FOR APPELLEE, DUSTIN BAILEY:

Dustin Bailey, *Pro Se*

COUNSEL FOR APPELLEE, ELEANOR W. BAILEY:

Eleanor W. Bailey, *Pro Se*

COUNSEL FOR APPELLEE, KAREN BAILEY HART:

Karen Bailey Hart, *Pro Se*

COUNSEL FOR APPELLEE, DANNY HART:

Danny Hart, *Pro Se*

COUNSEL FOR APPELLEE, ADDISON BAILEY:

Addison Bailey, *Pro Se*

COUNSEL FOR APPELLEE, LESLIE SPARKS:

Leslie Sparks, *Pro Se*