## Hardwick v. Poole, et al.

October 20, 1950.

H. F. S. Bailey, Special Judge.

Wilson & Wilson for appellant.

Withers, Lisman & Withers, Doolan, Helm, Stites & Wood for appellees.

JUDGE REES—Affirming.

This action was commenced on October 1, 1935, by the filing of a petition in equity in the Webster Circuit Court by several plaintiffs who held various claims growing out of the construction of the O. C. Vaughn public ditch in Webster County, and who were issued warrants for the amounts determined due them by the Drainage Board. The plaintiffs asked that the Board of Drainage Commissioners be required to make, certify and collect a levy against all the lands of the Vaughn Drainage District sufficient to pay and satisfy the warrants held by them. In a second amended petition the plaintiffs set forth in detail the proceedings and facts relative to the establishment of the O. C. Vaughn Drainage District and the construction of the ditch therein. In its answer the Board of Drainage Commissioners alleged that the warrants held by the plaintiffs were issued by an illegally appointed Board of Drainage Commissioners and were void. Additional pleadings were filed from time to time, and finally on April 5, 1946, an agreed statement of facts was filed. On that day this order was entered: "This day came the parties hereto and filed their agreed stipulation of facts, which is the evidence in this case, and the case is submitted to the Court upon said evidence and briefs of the parties."

The court adjudged that the indebtedness asserted by the plaintiffs was valid, and ordered the Board of Drainage Commissioners to levy and collect a tax sufficient to pay it. The Board of Drainage Commissioners has appealed.

The pertinent facts gleaned from the pleadings, exhibits and agreed stipulation are: The O. C. Vaughn Drainage District was established and the ditch constructed under section 2380-1 et seq. of Baldwin's Kentucky Statutes, now sections 267.010 to 267.990 Ken-

tucky Revised Statutes, and commonly known as the Drainage Act of 1912, Acts 1912, c. 132. At that time Webster County had more than 20 other drainage districts, all of which were established and the ditches therein constructed pursuant to proceedings begun and completed under the Drainage Act of 1912. The O. C. Vaughn drainage proceeding was begun by the filing of a petition in the Webster County Court on August 12, 1920. All landowners in the district were brought before the court, viewers were appointed, a contract for construction of the ditch was let, and the work was completed in 1924. It is stated in the agreed stipulation of facts that all steps taken were ''as nearly regular as is usually found in ditch proceedings under said Act (Drainage Act of 1912).'' The original estimated cost of construction was $90,000, but this estimate was based on the supposition that no rock in substantial quantities would be encountered and the construction contract contained a provision protecting the contractor in the event rock was encountered. A large amount of rock was encountered, and the final cost of the ditch exceeded the estimate by approximately $40,000. On September 5, 1925, the Webster County Court ordered an additional levy of 30% of the original assessment to cover the estimated additional expense, and this 30% additional levy was ordered paid in three 10% installments to be paid in each of the years 1925, 1926 and 1927, to be applied ''to the payment of such warrants as said Drainage Board may issue against such additional levy.'' Warrants for all the claims allowed were issued by the Drainage Board, but after the collection of the original and the 30% additional levy the claims of the plaintiffs in this action remained unpaid but interest thereon was paid until January 1, 1932. The warrants held by the plaintiffs amount in all to $13,269. Of these the warrant for $5,000 held by the Illinois Central Railroad Company is for the amount allowed to it for the construction of additional bridges and for right of way. The Railroad Company was required to construct new bridges in order to take care of water which was diverted by the ditch and caused to flow under its tracks. The warrant for $2,375 held by the Fred M. Crane Company is for the balance due on the construction contract. The warrants sued upon by the other plaintiffs are for attorney fees, engineering fees, advertising costs,

viewers' expenses and other expenses taxed as costs in the drainage proceeding.

The appellant, Board of Drainage Commissioners of Webster County, assigns two reasons for reversal of the judgment: (1) The present Board is without authority to ratify warrants which are void because issued by an illegally created Board; and (2) the order of the lower court, viewed in the light of the decision in Board of Drainage Commissioners for Webster County v. McGill, 251 Ky. 400, 65 S. W. 2d 91, is so indefinite that it cannot be carried out by the appellant.

The first reason is based on the fact that the O. C. Vaughn Drainage District was established, the ditch constructed, and the warrants herein issued when the Board was composed of three commissioners appointed by the County Court, whereas subsequent to the 1918 amendment to the Drainage Act of 1912 the Board should have been composed of one commissioner. The Drainage Act of 1912 provided for the appointment of a three member Board, but the 1918 amendment provided that one commissioner should be appointed. Prior to 1918 a three member Board administered the affairs of the various drainage districts in Webster County. The terms of the three members appointed just prior to the effective date of the 1918 amendment expired in March, 1922, and the County Court of Webster County, instead of appointing one member for the ensuing four year term, appointed three members as in the past, and the Board continued as a three member Board until the decision in the McGill case, supra, in 1933. It was pointed out in the opinion in that case that we have two separate alternative systems for the reclamation of wet lands, one established by the Drainage Act of 1912 and the other by the Drainage Act of 1918, now Chapter 268 of the Kentucky Revised Statutes, and that the Act of 1918 empowered the County Court to appoint a Board of Drainage Commissioners of the County consisting of three members while the Act of 1912 as amended in 1918 limited the membership of the Board to one. Whether the County Court of Webster County acted on the mistaken theory that the drainage districts in the County had been established under the Drainage Act of 1918 or whether the 1918 amendment to the Drainage Act of 1912 was overlooked does not appear. It is appellees' theory that the O. C. Vaughn Drainage District

having been established by the County Court and the landowners having stood by during the construction without making any objections and having received the benefits of the ditch, they are now estopped from relying upon any irregularity in the proceedings and from denying the validity of the acts of the Board of Drainage Commissioners. It is also contended that the Commissioners were de facto officers, and their acts were valid. We think the argument is sound in both respects. More than 25% of the londowners in the territory petitioned for the establishment of the O. C. Vaughn Drainage District and for the construction of a drainage ditch. All landowners in the district were made parties to the proceeding, and no objections were made to the establishment of the district or the construction of the ditch at any stage of the proceedings. They knew the contract had been let and stood by without any objection and permitted the construction of the ditch. They have used it since its construction and have benefited from it. We have held that a property owner in a city will not be permitted to stand by and allow the street in front of his property to be improved upon the faith that the cost was to be a charge upon his property without making some legal objection thereto before the work shall have been done. Hedger v. Kinsella, 284 Ky. 303, 144 S. W. 2d 515; Peicke v. City of Covington, 198 Ky. 683, 249 S. W. 1008; Realty Savings Company v. Southern Asphaltoilene Road Company, 180 Ky. 242, 202 S. W. 679; Caperton v. Humpick, 95 Ky. 105, 23 S. W. 875.

As heretofore pointed out, the 1912 Drainage Act provided for a County Board of Drainage Commissioners composed of three members, but the Act was amended in 1918 to provide for a single Commissioner. The amending act contained this provision: "This amendment shall not affect the Boards of Drainage Commissioners now holding office, but shall take effect upon the expiration of the terms of offices of the several boards of drainage commissioners now in existence." Acts 1918, c. 114.

The terms of the three members of the Board of Drainage Commissioners of Webster County who were holding office when the 1918 amendment became effective expired in 1922. The proceeding to establish the O. C. Vaughn Drainage District was initiated on August 12, 1920, and the affairs of this and all other drain-

age districts in Webster County continued to be administered by a three member Board until 1933, when the decision in the McGill case, supra, was rendered. The men appointed by the County Judge as Drainage Commissioners held possession of the office in good faith and performed the duties of the office under color of authority. They were not usurpers or intruders. They were appointed by the lawful appointing power, entered upon the discharge of their duties as members of the Board which the drainage act made a body corporate, and for more than ten years administered the affairs of the Drainage District without question or molestation. Under the circumstances, the persons appointed by the County Judge to act, and who did act, as Drainage Commissioners were de facto officers. Bard v. Board of Drainage Commissioners of Hickman County, 274 Ky. 491, 118 S.W.2d 1013; Wendt v. Berry, 154 Ky. 586, 157 S.W. 1115.

It is appellant's contention that the decision in Board of Drainage Commissioners for Webster County v. McGill, 251 Ky. 400, 65 S.W.2d 91, 93, is decisive of this case since it was there held that the County Court was without authority to appoint a Board of three members under the Act of 1912 as amended in 1918, and the Board of three members appointed under the Act of 1918 was without authority to levy a tax under that Act for the purpose of the Act of 1912 as amended. The question involved in the McGill case was the validity of three levies of 10% of the original cost of construction of the O. C. Vaughn Drainage District made in the years 1928, 1929 and 1930 for the maintenance of the ditch during those years. It was pointed out in that opinion that the Act of 1912 as amended in 1918 limited the levy for maintenance purposes in any one year to 2%, while the Act of 1918 permitted a levy of 10% for maintenance purposes. After stating that the County Court was without authority to appoint a Board of three members under the Act of 1912 as amended in 1918, the court said: "* * * the board of three members appointed under the act of 1918 was without authority to levy a tax under that act for the purposes of the act of 1912 as amended. Therefore, the levy of the taxes for the years 1928, 1929, and 1930, under the act of 1918 was unauthorized and void."

The levy would have been unauthorized if it had

712

been made by a legally appointed one member **Board** since the statute limited the levy in any one year to 2% of the original assessment. No question of estoppel was involved in the McGill case. The landowners refused to pay the assessments, and at the proper time contested the right of the Board to make the levies. Here, creditors with valid claims growing out of the original construction of the ditch are seeking to compel a legally constituted Board to levy an assessment sufficient to pay the indebtedness. The attack is on the warrants issued by the three member Board. These warrants evidence what were admittedly valid claims against the Drainage District, and in issuing them the three member Board performed a mere ministerial act at the direction of the County Court.

It is asserted by appellant that the judgment of the lower court if affirmed by this court will force some landowners to pay more than their proportionate share of the original cost of construction of the ditch, since many landowners failed to pay the original or supplemental assessments against them. We find nothing in the agreed stipulation of facts or elsewhere in the record indicating that some landowners have paid the earlier assessments and others have not. As was said by the chancellor in his opinion: "If this record had shown that no effort had been made to collect this tax and that it could have been collected then and in that event the court would not be authorized to grant the relief asked for in this action, unless the amounts were so small that the cost of collection was too great to do so. But such is not the case we have."

Judgment is affirmed.