# Supreme Court of Kentucky

## 2020-SC-0426-DG

JOHN BRUNER AND BETH BRUNER                  APPELLANTS

V.

ON REVIEW FROM COURT OF APPEALS
CASE NO. 2019-CA-1290
PULASKI CIRCUIT COURT NO. 09-CI-01301

DON COOPER AND CATHY COOPER             APPELLEES

## **ORDER**

The Petition for Rehearing, filed by Appellees, of the Opinion of the Court, rendered October 20, 2022, is DENIED.

The Petition for Modification, filed by Appellants, of the Opinion of the Court, rendered October 20, 2022, is GRANTED and the attached modified Opinion of the Court is hereby ORDERED SUBSTITUTED for the Opinion originally rendered. This modification does not affect the holding of the original Opinion.

All sitting. All concur.

ENTERED: August 24, 2023.

_____
CHIEF JUSTICE

# Supreme Court of Kentucky

2020-SC-0426-DG


JOHN BRUNER AND BETH BRUNER                    APPELLANTS


ON REVIEW FROM COURT OF APPEALS
V.                          NO. 2019-CA-1290
PULASKI CIRCUIT COURT NO. 09-CI-01301


DON COOPER AND CATHY COOPER                    APPELLEES


**OPINION OF THE COURT BY JUSTICE LAMBERT**

**REVERSING AND REINSTATING**

In 2009, Don and Cathy Cooper (the Coopers) sought to have a road that had been maintained by the Pulaski County Fiscal Court (the Fiscal Court) and used by the public and adjoining landowners John and Beth Bruner (the Bruners) declared their private roadway. The Pulaski Circuit Court initially found that the Coopers were estopped from bringing their claim, but the Court of Appeals directed the Pulaski Circuit Court to enter an order finding that the road was not a county road. During the second round of litigation, the Court of Appeals affirmed the circuit court's order finding that the road was neither a public road nor an easement.

The Bruners were later granted CR[1] 60.02 relief from the circuit court's

_____

[1] Kentucky Rule of Civil Procedure.

previous orders regarding the road's classification. The circuit court then granted summary judgment in favor of the Bruners based on its finding that the road was a public road by prescription. Thereafter, the Court of Appeals held that the circuit court erred by granting the Bruners CR 60.02 relief, and vacated its summary judgment order. The Bruners now request review of that opinion from this Court. After thorough review, we reverse the Court of Appeals and reinstate the circuit court's grant of summary judgment.

## I. FACTS AND PROCEDURAL BACKGROUND

The road at issue in the underlying litigation is Edward Meece Road (the road), formerly Union Science Hill Road. It is a dead-end road in Science Hill, Kentucky, that runs the length of the Coopers' 65-acre property's eastern border. It was undisputed that the road is located on the Coopers' deeded property. The point at which the road hits a dead-end begins at the Bruners' property, an 82-acre cattle farm. East of the road is a subdivision of smaller plots of land owned by the individuals who filed to intervene (the Intervenors) in this case during the later stages of its now thirteen-year long history. The Coopers, the Bruners, and the Intervenors all have residences on their respective properties, and the road provides access to each of the properties.

The Fiscal Court had maintained the road for at least seventeen years before the Coopers purchased the property that encompasses the road on June 1, 1993. Sixteen years after purchasing the property, in September 2009, the Coopers filed an action in Pulaski Circuit Court against the Fiscal Court and

2

the Bruners which sought to have the road declared their private roadway. In the intervening years between the Coopers' purchase of the property and the circuit court action, the Fiscal Court continued to spend taxpayer money maintaining the road. This maintenance included building a bridge on the road in 2000 and mowing around the road. The Coopers performed no maintenance or upkeep on the road but observed the county maintenance and community use of the road.

**A. The first round of litigation.**

In their 2009 complaint, the Coopers named the Bruners and the Fiscal Court as defendants. But they did not name the property owners who owned the smaller plots of land east of the road. At no time were those property owners joined as parties to this case during its first two iterations before the circuit court. The Coopers alleged that the Fiscal Court failed to follow the statutory procedural steps to adopt the road as a county road under KRS[2] Chapter 178,[3] and that it should therefore be declared their private roadway. Specifically, the Coopers argued that the Fiscal Court failed to comply with KRS 178.050, which states:

> (1) No county road shall be established . . . unless due notice thereof has been given according to the provisions of this chapter.

> (2) Notices and advertisements for the establishment . . . of any county road . . . and all notices and advertisements for the letting of contracts for construction or maintenance of county roads and

---

[2] Kentucky Revised Statutes.

[3] "'County roads' are public roads which have been formally accepted by the fiscal court of the county as a part of the county road system[.]" KRS 178.010(1)(b).

3

bridges under the provisions of this chapter shall be published pursuant to KRS Chapter 424 by the county road engineer.

During discovery, the Coopers twice requested that the Fiscal Court produce "all fiscal court orders, resolutions, ordinances, minutes, and/or any other records of any nature whatsoever on file or maintained by the Pulaski Fiscal Court that in any way reference the Ed Meece Road for the last 50 years," as well as, "the year and exact date that the Edward Meece Road was taken into the Pulaski County Road system." The Fiscal Court responded that it adopted the road on June 30, 1976, and produced a copy of minutes from a Pulaski County Fiscal Court meeting from June 30, 1976, that included the following:

> Sherman Taylor appeared concerning the Union-Science Hill Road. He request (sic) the court's permission to move this road. Motion was made by Magistrate Langdon seconded by Magistrate Huff to accept the Union-Science Hill Road for County maintenance. All Court in favor.

To account for the discrepancy in the road's name, the Fiscal Court also submitted an unsworn note that explained that when the road was adopted by the Fiscal Court in 1976, it was called "Union Rd.," and that Ed Meece bought the property the same year. The Fiscal Court also provided the affidavit of Fred Neikirk, the Pulaski County Attorney from 1974 until 2001. His affidavit stated that he advised the Fiscal Court on legal matters, including the adoption of county roads. He further attested that KRS Chapter 178 posting requirements were "typically done," though he could not remember the adoption of the road at issue in this case specifically.

4

The Coopers later filed a motion for summary judgment arguing that the Fiscal Court had produced no affirmative evidence that it complied with the notice requirements of Chapter 178. The Fiscal Court responded that it was entitled to a presumption of regularity, i.e., the "presumption that public officers have performed their duties as required by law[.]"[4] The Fiscal Court asserted that, because the burden of proof was on the Coopers, they had to provide affirmative evidence that the Fiscal Court did *not* follow the statutory requirements.

In addition to their argument that the road was properly adopted as a county road, the Bruners and the Fiscal Court further argued that the Coopers should be estopped from bringing their claim under existing precedent that holds a property owner may not sit idly by and allow a municipality to improve their property without first making a legal objection to the action.[5] And, if the property owner does nothing and receives a benefit from the municipality's actions, then the property owner is "estopped from relying upon any irregularity in the proceedings and from denying the validity of the acts[.]"[6] The Bruners also argued that, should the court disagree that the Coopers were estopped from filing the claim and further find that the road was not a county road, it should find that it was a public road by prescription or an easement by prescription.

---

[4] *Hennessy v. Bischoff*, 240 S.W.2d 71, 71 (Ky. 1951).

[5] *Hardwick v. Poole*, 233 S.W.2d 419, 421 (Ky. 1950).

[6] *Id.*

In October 2011, the circuit court entered summary judgment in favor of the Fiscal Court and the Bruners based primarily on the presumption of regularity asserted by the Fiscal Court. The circuit court agreed that the Coopers bore the burden of proof to show that the Fiscal Court did not follow the proper procedures in adopting the road, and that they had produced no affirmative evidence to that effect. Furthermore, the court found that

> even if the [Coopers] were able to provide some affirmative evidence, they would still be estopped from challenging the action. There is a long established precedent that a property owner may not sit idly by and allow a municipality to improve a street in front of their property without first making some legal objection to the action. *Hardwick v. Poole*, 233 S.W.2d 419 (Ky. 1950). Further, if the property owner simply does nothing and received the benefits of the action, then the property owner is estopped from "relying upon any irregularity in the proceedings and from denying the validity of the acts." *Id.* The responsibility lies upon the landowner to bring the action to the attention of the government entity, argue the irregularity and, if necessary, pursue legal action to restrain the activity prior to the cost of the government and benefit to the landowner. *Peicke v. City of Covington*, 249 S.W. 1008 (Ky. 1923).

The court noted that in the sixteen years between the Coopers' purchase of their property and the filing of their claim, they "watched the county expend financial resources of almost $3,500.00 to build a bridge and spend additional monies mowing the roadway, and failed to protest." The court further found that the Fiscal Court's expenditure of money benefitted the Coopers' property.

Following the circuit court's ruling, the Coopers appealed to the Court of Appeals, which reversed the circuit court and remanded.[7]  The court reasoned that the presumption of regularity did not entitle the Fiscal Court and Bruners to summary judgment on the issue of whether the road was a county road in the absence of an official order, resolution, or ordinance of the fiscal court demonstrating the road's adoption:

> Here, the Fiscal Court simply argues that the "presumption of regularity," in and of itself, effectively transmuted Edward Meece Road into a "county road." . . . [T]he *procedure* for adopting a county road entails several duties to which the presumption of regularity has been applied.  However, the Fiscal Court's ultimate *decision* to adopt a given road as a county road—and thus assert control and possession of it—must be evidenced by proof consisting of an official order, resolution or ordinance of the fiscal court that appears of record.  This point was underscored in *Illinois Cent. R. Co. v. Hopkins County*, 369 S.W.2d 116 (Ky.1963), in which the Court held that a road was not a "county road," even in the face of several years' worth of county maintenance and a substantial passage of time, in the absence of a formal order of the fiscal court accepting the road into its system of maintenance.[8]

Consequently, because the Fiscal Court had produced no such order, the road was not a county road.[9]  The court remanded with orders that the circuit court enter partial summary judgment in favor of the Coopers on the basis that the road was not a county road.[10]  As for the Bruners' assertion that the road was a public road or an easement, the court held that there had not been sufficient

---

[7] *Cary v. Pulaski Cnty. Fiscal Ct.*, 420 S.W.3d 500 (Ky. App. 2013).  We note here that the first appeal in this case was consolidated with an unrelated case for consideration by the Court of Appeals, hence the discrepancy in the case name.

[8] *Cary*, 420 S.W.3d at 507-08.

[9] *Id.* at 508.

[10] *Id.* at 509.

discovery on those issues, and remanded for further proceedings.[11]  Bafflingly though, the Court of Appeals did not acknowledge or address the trial court's finding that the Coopers were estopped from bringing their claim in the first place based on their exceptional delay in bringing it.  It does not appear from the record before us that either party sought discretionary review by this Court.

**B. The second round of litigation.**

On remand, consistent with the Court of Appeals' ruling, the circuit court entered partial summary judgment in favor of the Coopers on September 8, 2014.  Under the same order, the Fiscal Court was dismissed from the proceedings.  During the ensuing months, the Bruners' attorney appeared to do little to no work on the case: no depositions were taken, and no additional evidence was filed.  Accordingly, the Coopers again moved for summary judgment on the grounds that there was no evidence of record that the road was a public road or an easement.  On April 6, 2015, after previously affording the Bruners an additional ten days to produce evidence, the circuit court entered an order denying the Bruners' second motion for additional time and granting the Coopers' motion for summary judgment.  The Bruners' appealed this ruling to the Court of Appeals, which affirmed.[12]  The court held that the road was neither a public road nor an easement based upon the Bruners'

---

[11] *Id.* at 508-09.

[12] *Bruner v. Cooper*, 2015-CA-000742-MR, 2016 WL 5485356 (Ky. App. Sept. 30, 2016).

failure to produce any evidence to either effect.[13]  It does not appear that discretionary review by this Court was sought.

## C. The third round of litigation.

In April 2017, six months after the Court of Appeals' ruling, the Coopers installed a gate across the road.  This gate blocked access to both the Bruners' property and the smaller properties in a subdivision that sits east of the road.  In July 2017, five individuals that own property in that subdivision, as well as the bank that is the mortgagee for the Bruners' property, filed a motion to intervene under CR 24.01 and for relief from a final judgment under CR 60.02.

Four of the intervening property owners provided affidavits, each of which stated essentially the same things, to wit: they owned land serviced by the road; it was always their understanding that the road was a county road; they were never given legal notice of the underlying litigation; and they had suffered harm because access to their land via the road is now blocked by the gate.  The bank asserted that it too was unaware of the previous litigation, and that it approved the Bruners' loan based on its belief that the property was serviced by either a county road or public road.  It further contended that the value of the Bruners' property was harmed by the installation of the gate because it could no longer be reasonably accessed.

Meanwhile, the Coopers' installation of the gate prompted the Bruners to conduct their own independent research, without counsel.  As a result of that

---

[13] *Id.* at *3-*4.

research, in November 2017, the Bruners filed their own motion for relief under CR 60.02(e)[14] or (f)[15]. The Bruners filed with their motion a 1990 "County Roads Series Map" for Pulaski County. On that map, and its corresponding list of roads, Edward Meece Road is identified as a county road. The bottom of the map states: "Date approved by Fiscal Court: 1-23-1990." The Bruners also submitted minutes from a meeting of the Fiscal Court from January 23, 1990. In relevant part, those minutes state:

> Motion was made by Magistrate Floyd seconded by Magistrate Jasper to accept the map presented by the Department of Transportation as the official system of county roads for Pulaski County and any road that is not shown on this map is not a county road. All court in favor.

The Bruners asserted that it was accordingly no longer equitable to allow the Coopers to exercise dominion over it as though it were a private road. Even though the Bruners argued for relief under CR 60.02(e) and (f), the Coopers responded that the evidence was not newly discovered under CR 60.02(b),[16] as

---

[14] "On motion a court may, upon such terms as are just, relieve a party or his legal representative from its final judgment, order, or proceeding upon the following grounds . . . (e) the judgment is void, or has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application[.]" CR 60.02(e).

[15] "On motion a court may, upon such terms as are just, relieve a party or his legal representative from its final judgment, order, or proceeding upon the following grounds . . . (f) any other reason of an extraordinary nature justifying relief." CR 60.02(f).

[16] "On motion a court may, upon such terms as are just, relieve a party or his legal representative from its final judgment, order, or proceeding upon the following grounds . . . (b) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59.02[.]" CR 60.02(b).

10

it could have been found during the original litigation with due diligence.

Therefore, the Coopers asserted, the Bruners were not entitled to relief.

On June 6, 2018, the circuit court entered an order granting both the

Intervenors' motion to intervene under CR 24.01 and the Bruners' motion for

CR 60.02 relief. The court first found that the Bruners were entitled to relief

under CR 60.02(e). It reasoned:

> The Bruners allege that they are entitled to relief pursuant to CR 60.02 clauses (e) and (f). This Court will begin its analysis in 60.02(e). A court may relieve a party from its final judgment, order, or proceeding on the grounds that it is no longer equitable that the judgment should have prospective application. This Court must determine what is equitable in light of all the facts and circumstances in a particular case.
>
> In ideal circumstances, the proposed map and Fiscal Court minutes would have been found at a much earlier date and timely submitted into evidence; however, to ignore such now would be to value form over substance. As noted by the Kentucky Court of Appeals in *First Nat. Bank of Grayson v. Citizens Deposit Bank and Trust*, pleadings should be judged by their substance rather than by their form. [735 S.W.2d 238, 330 (Ky. App. 1987)]. This Court is in no way suggesting that the minutes from the fiscal court meeting in 1990 is the determinative missing link which would prove Edward Meece Road's classification, merely that the existence of such records make the current judgment inequitable. Any further determination will be made by this Court sooner rather than later. Having weighed the merits and demerits of the proposed relief, as well as the inequities that would be imposed, this Court finds that enforcement of the judgment granted to the Coopers would be wholly inequitable against the Bruners given the paramount importance served by the truth-finding function of the trial court.
>
> . . . .
>
> This Court has made every effort to be fair and just in this case, as the search for the truth of the matter has seemed elusive. Even though compelling that the case remain closed and final, the post-judgment evidence sought to be considered as a basis to reopen this case is not cumulative, but is material and is probable to

11

result in a different outcome. [The Fiscal Court], as a Defendant, did not introduce such evidence, and considering its date of nearly three decades ago, being part of the county minutes, it cannot be found by this Court that the Defendants were not diligent in a search for it. However, most significantly, the Court concludes that it is no longer equitable that the judgment should have prospective application, all things considered.

The circuit court accordingly vacated its summary judgment orders from September 8, 2014 (finding that the road was not a county road) and April 6, 2015 (finding that the road was neither a public road nor an easement), respectively.

Next, regarding the motion to intervene, the court, citing *Polis v. Unknown Heirs of Jessie C. Blair*,[17] noted that "[a]cting timely, a movant has a right to intervene when it claims an interest relating to property which is the subject of the primary action and when the disposition of the action may impede its ability to protect that interest." The court found that the Intervenors' motion was timely based on their respective affidavits which stated that their first notice of the litigation occurred when their properties allegedly became "land-locked" after installation of the gate. And, because "any further litigation regarding [the road's] classification could necessarily involve their respective property interests," their participation in the litigation was necessary to protect those interests. The court therefore granted the motion.

The Bruners and the Intervenors later filed respective motions for summary judgment. The Intervenors, citing the 1990 map provided by the

---

[17] 487 S.W.3d 901 (Ky. App. 2016).

12

Bruners, argued that the road was clearly a county road. The Bruners likewise argued that the road should be declared a county road or public road, and that the Coopers should be ordered to remove their gate. The Bruners submitted affidavits from four individuals in support of their motion for summary judgment.

Two of the affidavits concerned a brief history of the relevant properties. The testimony in the affidavits, given by Joyce Meece and Joan Taylor respectively, can be summarized as follows: Joyce Meece and her husband Edward Meece previously owned the Bruner property from 1976 until 2001. The Meeces purchased the property from Bertha Bubnick in 1976. Joan Taylor and her late husband Sherman Taylor formerly owned the large plot of land east of the road that was later split into subdivisions. The road, formerly Union Science Hill Road, serviced the properties of the Meeces, the Taylors, and Roy Cooper, the Coopers' predecessor in title and Don Cooper's father. When Bubnick still owned the Bruner property, the Taylors put a gate across the road. Roy Cooper and Bubnick sued the Taylors because the gate blocked access to their properties. The suit ultimately resulted in a court declaring the road a public passway, and sometime in the late 1970's the road was taken into the county system. The Meeces, Taylors, and Coopers all agreed to the county adopting the road, and the county continuously maintained the road throughout the time the Meeces and the Taylors owned their properties.

The other two affidavits submitted by the Bruners were that of two former Pulaski County public officials, Darrell Beshears and Louie Floyd.

13

Darrell Beshears was the Pulaski Judge Executive from 1986 until 1993, and knew that the 1990 map tendered by the Bruners included Edward Meece Road as a county road. Louie Floyd was a Pulaski County Magistrate from 1978 until 1993, and attested that the road was part of the county system and maintained by the county both before and during his tenure. He was also aware that Edward Meece Road was included as a county road on the 1990 map. The Coopers responded that the Bruners had still provided no evidence that the Fiscal Court complied with KRS 178.050 or KRS Chapter 424 in adopting the road as a county road.

On August 7, 2019, the circuit court granted summary judgment in favor of the Bruners. The court agreed with the Coopers' argument that there was "insufficient evidence of record as to whether the statutory requirements for establishing a new [county] road set forth in KRS 178.050 and KRS Chapter 424 have been met." However, the court found that there was sufficient evidence to find that the road was a public road through dedication by prescription. On this front, the court noted that the general public may create a public road and a property interest therein through dedication by prescription.[18] It recounted that in order to establish a public road by prescription, all elements of adverse possession must be present for fifteen

---

[18] *Ellington v. Becraft*, 534 S.W.3d 785, 796 (Ky. 2017).

years,[19] i.e., the possession must be hostile and under a claim of right, actual, exclusive, open and notorious, and continuous.[20]  It then found:

> The case at bar calls into question the element of exclusivity when taken with the long history of the road's public use; the county records of maintenance for a span of thirty years; and the understanding of other residents that the road was a county road. The Kentucky Supreme Court notes that to meet the exclusivity element, the property, "must not be shared with the disseised owner." [*Ellington*, 534 S.W.3d at 802 n.3.]

> Edward Meece Road inherently meets the hostile element because the county exercised dominion over the road and, in which case there would be no issue, users of the road were outwardly infringing on private property rights as there is no evidence of the proper statutory requirements being met to officially designate it as a county road.  Pulaski County asserted, through its conduct, that it held title to the road exclusively.  The use was continuous, as the county serviced and maintained the road for many years— evidence for more than thirty years of which are in record.  The road was openly used by the Bruners and other residents.  Thus, control exercised over Edward Meece Road was certainly open and notorious.  The record shows that a bridge was erected on the road in 2000 and [the Fiscal Court] routinely mowed, paved, and maintained the road.  Finally, [the Fiscal Court] maintained exclusive control over the road for well over thirty years in which the road was thought by everyone in the county to be public and ownership was not contested.  As such, the evidence presented is sufficient to support a finding that the use of the road by the Bruners is actual, hostile, open and notorious, and continuous, as required to create a [public road by prescription].

> The Affidavits in the record indicate that Edward Meece agreed to the road being taken into county control.  Per the affidavits, according to his widow, Joyce Meece, the other individuals living on the road at the time it was taken over by the county, Roy Cooper and Sherman Taylor, were in favor of and fully aware of that designation as well.  Pulaski County has controlled the road on behalf of the public from 1977-2009.  This is well beyond the fifteen-year limit and meets all elements of adverse possession since these individuals willingly gave the road to the county and

---

[19] *Id.* at 796.

[20] *Moore v. Stills*, 307 S.W.3d 71, 77 (Ky. 2010).

15

were not contesting ownership during the fifteen-year period. Even if the road was not officially designated as a county road, the individuals living on the road during the fifteen-year period did not contest its ownership.

. . . .

Furthermore, the Supreme Court has said that county control is not necessary for dedication by prescription; however, the Supreme Court's language strongly suggests that the presence of county control and public use creates a stronger claim for dedication by prescription. [*Ellington*, 534 S.W.3d at 793-94.]

Based on the foregoing analysis, Edward Meece Road is a public road through dedication by prescription via the public's thirty-plus years of control over the road. The record does not indicate abandonment of that road by the public, as any period of nonuse would be presumably attributed to this litigation. The evidence presented in the record shows that Edward Meece Road is a public road through dedication by prescription, and there is no possible evidence that would negate these findings. As such, it matters naught that the road was not officially designated a county road established through KRS Chapters 178 and 424.

The Coopers appealed the circuit court's ruling to the Court of Appeals, which reversed.[21] The Court of Appeals held that law of the case doctrine prohibited the circuit court from granting the Bruners CR 60.02 relief.[22] In reaching its conclusion, the court interpreted *Toyota Motor Manufacturing, Kentucky, Inc. v. Johnson*[23] to hold that the only way to overcome the law of the case doctrine by way of CR 60.02 is to be entitled to relief under CR 60.02(f).[24]

---

[21] *Cooper v. Pulaski Cnty. Fiscal Ct.*, 2019-CA-001290-MR, 2020 WL 4555519 (Ky. App. Aug. 7, 2020).

[22] *Id.* at *3.

[23] 323 S.W.3d 646, 653 (Ky. 2010).

[24] *Cooper*, 2020 WL 4555519, at *3 ("The Supreme Court only allowed for an exception of an *extraordinary nature*, which is confined to the language set out in CR 60.02(f).").

16

The court went on to hold that the trial court erred by granting the Bruners relief under CR 60.02(e) because neither CR 60.02(e) or (f) were applicable.[25] The court noted that the Bruners had ample time to discover the evidence at issue during the original proceedings, but failed to do so.[26] Citing an unpublished Court of Appeals opinion, *Greenamyer v. Louisville Metro Government*,[27] the court held that "inaction is not an extraordinary circumstance warranting relief under CR 60.02(e) or (f)."[28]

Instead, the court held that subsection (b), which grants relief on the basis of newly discovered evidence, applied to the Bruners' request for relief.[29] CR 60.02(b) requires that the newly discovered evidence is that "which by due diligence could not have been discovered in time to move for a new trial under Rule 59.02,"[30] i.e., "not later than 10 days after the entry of the judgment."[31] The Court of Appeals found that the Bruners could not meet this standard because "[w]ith diligence, the evidence the Bruners introduced could have been discovered prior to the appeals."[32] The Court of Appeals consequently held that its "prior holdings that Edward Meece Road is not a county road, a public road,

---

[25] *Id.* at *4.

[26] *Id.* at *5.

[27] 2011-CA-000009-MR, 2012 WL 917167 (Ky. App. Mar. 16, 2012).

[28] *Cooper*, 2020 WL 4555519 at *4.

[29] *Id.*

[30] CR 60.02(b).

[31] CR 59.02.

[32] *Cooper*, 2020 WL 4555519 at *5.

17

nor an easement by prescription or otherwise still apply."[33]  It reversed the

circuit court's grant of summary judgment and remanded for entry of summary

judgment in favor of the Coopers.[34]  The Bruners now appeal that ruling to this

Court.[35]

Additional facts are discussed below as necessary.

## II. ANALYSIS

To resolve the case at bar, this Court must determine whether the Court

of Appeals was correct in reversing the circuit court's summary judgment in

favor of the Bruners on the grounds that it was error for the circuit court to

grant them CR 60.02 relief.

### A. The circuit court did not err by granting the Bruners' motion for CR 60.02 relief.

"This Court has held that actions under CR 60.02 are addressed to the

'sound discretion of the court and the exercise of that discretion will not be

disturbed on appeal except for abuse.'"[36]  A circuit court abuses its discretion if

---

[33] *Id.*

[34] *Id.* at *6.

[35] We note here that the Court of Appeals also reversed on the grounds that the circuit court erred by granting the Intervenors' motion to intervene. *Id.* at *5-*6. The Court of Appeals held that the circuit court's ruling was clearly erroneous because it did not conduct the proper analysis in determining that the CR 24.01 motion should be granted. *Id.* The Intervenors did not seek review of that ruling by this Court, and they are not parties to the present appeal. Nevertheless, we want to highlight that, ideally, the Court of Appeals would have remanded the case to the circuit court so that it could conduct the proper analysis under applicable case law rather than vacating the circuit court's order outright.

[36] *Brown v. Commonwealth*, 932 S.W.2d 359, 362 (Ky. 1996) (quoting *Richardson v. Brunner*, 327 S.W.2d 572, 574 (1959)).

18

its "decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles."[37]  The relevant portions of CR 60.02 state:

> On motion a court may, upon such terms as are just, relieve a party or his legal representative from its final judgment, order, or proceeding upon the following grounds: . . . (b) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59.02; . . . (e) . . . it is no longer equitable that the judgment should have prospective application; or (f) any other reason of an extraordinary nature justifying relief.  The motion shall be made within a reasonable time, and on grounds (a), (b), and (c) not more than one year after the judgment, order, or proceeding was entered or taken.

The Bruners' motion for relief was argued and granted by the circuit court under CR 60.02(e).  The Court of Appeals held that this was error because CR 60.02(b) applied to their claim.[38]  We disagree.

CR 60.02 requires that any motion under subsection (b) must be made within one year after the final judgment.  The Court of Appeals affirmed circuit court's judgment on September 30, 2016, and the Bruners filed their CR 60.02 motion on November 17, 2017.  Because this was two months outside of the one-year window, the Bruners would not have met the statutory requirements to file under CR 60.02(b).  Further, prior case law from this Court suggests that, at any rate, the circuit court would have been without jurisdiction to entertain a motion made in violation of the one-year rule.[39]  In contrast, CR 60.02(e) requires only that the motion be filed within a "reasonable time."

---

[37] *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky.1999).

[38] *Cooper*, 2020 WL 4555519, at *4.

[39] *Toyota Motor*, 323 S.W.3d at 650 ("First, as to subsections (a) through (c) of CR 60.02, some authority would suggest that a trial court lacks jurisdiction to reopen

19

In addition, a CR 60.02 motion may be brought on the basis of new evidence without having to be addressed under CR 60.02(b).  For example, in *Crowder v. Commonwealth ex rel. Gregory*, a default judgment of paternity was entered against Harry Crowder in 1979 by the Commonwealth on behalf of his alleged child's mother, Patsy Gregory.[40]  Several years later, in 1985, Crowder obtained an affidavit signed by Gregory's ex-husband stating that Gregory told him she knew Crowder was not the child's father.[41]  Based on this information, Crowder filed for CR 60.02 relief from the paternity judgment and requested that the court order biological testing to establish the child's paternity.[42]  The court granted Crowder's request for biological testing, which confirmed that Crowder was not the child's father, but it denied Crowder's  motion for relief under CR 60.02(e) and (f).[43]  The Court of Appeals reversed, and held:

> The Commonwealth contends that under CR 60.02(e) and (f) the trial court did not abuse its discretion by refusing to relieve Crowder from the default judgment because Crowder failed to exercise due diligence by failing to file his motion for blood tests until six years from the entry of default judgment.
>
> We initially observe that the admission into evidence of the HLA [Human Leukocyte Antigen] test results was not judicially approved until June 15, 1983, when the Kentucky Supreme Court rendered its opinion in *Perry v. Commonwealth*, Ky., 652 S.W.2d 655 (1983).  By that time default judgment had already been entered against Crowder and affirmed on appeal.  Any motion for

---

a judgment under these subsections if a year or more has passed since entry of judgment.").

[40] 745 S.W.2d 149, 150 (Ky. App. 1988).

[41] *Id.*

[42] *Id.*

[43] *Id.*

blood tests, absent a showing of one of the grounds in CR 60.02 would have been improper.

When [Gregory's ex-husband] came forward with the information of the mother's admission, Crowder acquired grounds for his motion, and promptly moved the court for relief under the rule. The trial court granted Crowder's motion to the extent that HLA blood testing was ordered. We point out here that CR 60.02 allows a trial court, upon a proper showing, to relieve the moving party of its final judgment "upon such terms as are just." We believe that based upon the new evidence before the court tending to show it was no longer equitable for the judgment to have prospective application [CR 60.02(e)], the court properly exercised its discretion by ordering the blood tests.[44]

The court then reversed and remanded for an order setting aside the default judgment of paternity.[45] Point being, nowhere in *Gregory* is CR 60.02(b) even mentioned notwithstanding that Gregory's motion was technically based on new evidence.

In this case, during the first round of litigation, the Fiscal Court responded to two separate discovery requests for "all fiscal court orders, resolutions, ordinances, minutes, and/or any other records of any nature whatsoever on file or maintained by the Pulaski Fiscal Court that in any way reference the Ed Meece Road for the last 50 years[.]" The Fiscal Court did not provide the 1990 map and Fiscal Court minutes later discovered by the Bruners in either of its discovery responses. This would, understandably, have led the Bruners to believe that the few documents provided by the Fiscal Court were all that existed concerning the road. Out of desperation after the Coopers

---

[44] *Id.* at 150-51.

[45] *Id.* at 151.

installed a gate, the Bruners, without counsel, went searching for information about the road in the Kentucky Department of Highways' records. That is where they discovered the 1990 map, which led them to later find the January 1990 Fiscal Court minutes.

The circuit court found that the existence of the 1990 map and minutes was not "the determinative missing link which would prove Edward Meece Road's classification," but, nonetheless, the "existence of such records make the current judgment inequitable ... given the paramount importance served by the truth-finding function of the trial court." Stated differently, the fact that this evidence exists, but was not provided by the fiscal court, makes it possible that other evidence may exist that could aid the court in deciding the road's proper classification. In light of this, and the fact that "the truth of the matter [had] seemed elusive," the circuit court found that continued application of its summary judgment orders in favor of the Coopers was no longer equitable. We cannot hold that this reasoning under the particular set of circumstances presented by this case was arbitrary, unreasonable, unfair, or unsupported by sound legal principles.

Moreover, we disagree with the Court of Appeals' interpretation of *Toyota Motor*, to hold that that the only way to overcome law of the case doctrine on CR 60.02 grounds, is to be entitled to relief under CR 60.02(f). In *Toyota Motor*, the plaintiffs tried to bring a wage and hour dispute in circuit court, but their

22

claim was dismissed based on then-existing case law which held that circuit

courts did not have jurisdiction over wage and hour disputes.[46]  After the

circuit court's ruling was affirmed on appeal, the plaintiffs filed their disputes

with the Kentucky Department of Labor.[47]  While those administrative

proceedings were ongoing, this Court ruled that circuit courts have original,

parallel jurisdiction over wage-and-hour disputes.[48]  Based on this change in

the law, the plaintiffs filed for CR 60.02(f) relief in circuit court and requested

that their claims be re-opened.[49]  After the circuit court granted the plaintiffs'

CR 60.02 motion, Toyota appealed to the Court of Appeals under *Asset*

*Acceptance, LLC v. Moberly*.[50]  Toyota's appeal was then transferred to this

Court.[51]

This Court disagreed with Toyota's argument "that the law of the case

doctrine prevented the trial court from exercising jurisdiction to rule on or

grant CR 60.02 relief."[52]  Toyota argued that the original decision of the circuit

court dismissing the plaintiffs' case for lack of jurisdiction had not been

disturbed by an appellate court, thereby blocking the circuit court's

---

[46] *Toyota Motor*, 323 S.W.3d at 648.

[47] *Id.*

[48] *Id.*

[49] *Id.*

[50] 241 S.W.3d 329 (Ky. 2007) (holding that a trial court's grant of CR 60.02(f) relief was immediately appealable if it appeared to be an untimely attempt to reopen under CR 60.02(a)-(c)).

[51] *Toyota Motor*, 323 S.W.3d at 648-49.

[52] *Id.* at 652-53.

jurisdiction to hear Sergent's CR 60.02(f) motion under law of the case.[53]  This

Court held:

> We believe that a trial court's jurisdiction to determine whether extraordinary circumstances merit relief from a judgment includes jurisdiction to determine whether extraordinary circumstances also merit application of one of the exceptions to the law of the case doctrine.
>
> . . . .
>
> Our opinion [*Kentucky Board of Medical Licensure v. Ryan*, 151S.W.3d 778 (Ky. 2008)], did not suggest that application of the law of the case doctrine would preclude a court from having jurisdiction to hear a CR 60.02 motion.
>
> . . . .
>
> In short, we conclude that the law of the case doctrine does not invariably deprive a trial court of jurisdiction to reconsider under CR 60.02(f) an issue already decided if the law upon which the original decision was based—including a controlling appellate opinion—has materially changed.[54]

In this case, the Court of Appeals held that even if the Bruners were

entitled to relief under CR 60.02(e), it would have still been improper for the

circuit court to grant that relief because the Bruners could not overcome law of

the case doctrine by showing entitlement to relief under CR 60.02(f).  The Court

of Appeals, citing *Toyota Motor*, reasoned that "[t]he Supreme Court only

allowed for an exception of an *extraordinary nature*, which is confined to the

---

[53] *Id*. at 653.

[54] *Id.*

language set out in CR 60.02(f)."[55]  But *all* relief under CR 60.02 is relief of an extraordinary nature, as it forces a final judgment to be vacated.  Indeed, the language of CR 60.02(f), which is a "catch-all provision" reserved only for those circumstances wherein a petitioner cannot show entitlement to relief under CR 60.02(a)-(e),[56] says "**any other** reason of an extraordinary nature justifying relief."[57]  This language acknowledges that CR 60.02(a)-(e) are also reasons of an extraordinary nature.

The Court of Appeals' interpretation of *Toyota Motor* would in effect render CR 60.02 a dead letter.  If the only way to rebut law of the case doctrine is to prove entitlement to relief under CR 60.02(f), then what purpose would relief under CR 60.02(a)-(e) ever serve?  A trial court could appropriately grant relief under one of those subsections, just to have an appellate court hold that relief is precluded under law of the case.  This is an absurd result.  While *Toyota Motor* happened to involve a claim under CR 60.02(f), if a movant is properly entitled to relief under any of CR 60.02's subsections, it can overcome law of the case doctrine under the appropriate circumstances.  That is, after all, CR 60.02's purpose.

Based on the foregoing, we hold that the circuit court did not abuse its discretion by granting the Bruners' motion for CR 60.02(e) relief.

---

[55] *Cooper*, 2020 WL 4555519, at *3.

[56] *Snodgrass v. Snodgrass*, 297 S.W.3d 878, 884 (Ky. App. 2009) ("[R]elief under subsection (f) of CR 60.02 will not be available unless none of that rule's other specific provisions applies.").

[57] CR 60.02(f) (emphasis added).

25

**B. The circuit court did not err by granting summary judgment in favor of the Bruners.**

We further hold that the circuit court's grant of summary judgment to the Bruners was proper. This Court reviews a trial court's grant of summary judgment as follows:

> The proper standard of review on appeal when a trial judge has granted a motion for summary judgment is whether **the record, when examined in its entirety, shows there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law**. The trial judge must view the evidence in a light most favorable to the nonmoving party, resolving all doubts in its favor. Because summary judgment does not require findings of fact but only an examination of the record to determine whether material issues of fact exist, we generally review the grant of summary judgment without deference to either the trial court's assessment of the record or its legal conclusions.[58]

**(1)** *The Coopers were estopped from bringing their claim thorough estoppel by inaction or silence and the doctrine of laches.*

After reviewing the entire record of this case's long, convoluted history, it strikes this Court that the Coopers should have been estopped from bringing their claim from this case's inception through either: (a) estoppel by silence or inaction; or (b) the doctrine of laches. There were no genuine issues of material fact surrounding these issues, and the Bruners were entitled to summary judgment as a matter of law under these doctrines.

As the circuit court correctly found during the first round of litigation when it granted summary judgment to the Fiscal Court and the Bruners, it is a long-standing precedent of this Commonwealth that a property owner who sits

---

[58] *Hammons v. Hammons*, 327 S.W.3d 444, 448 (Ky. 2010) (internal citations and quotation marks omitted) (emphasis added).

idly by while a municipality makes improvements to land on or near his

property will be estopped from thereafter challenging validity of the acts of that

municipality.[59]  As stated in *Martin v. Gayheart*,

> It is a rule of general application in all jurisdictions that one who stands by and sees another enter upon land under a claim of right and permits the entrant to make expenditures or improvements under circumstances which would call for notice or protest cannot afterward assert his own title against such person.  As some of the authorities broadly state the principle, **one who knowingly and silently permits another to expend money on land under a belief that he has title will not be permitted to set up his own right to the exclusion of the one who made the improvements**. The rule is stated in 19 Am.Jur., Section 57, Page 668, Estoppel, as follows:
>
>> 'The courts are especially disposed to uphold a claim of estoppel by silence or inaction where one party with full knowledge of the facts has stood by without asserting his rights or raising any objection while the other party, acting on the faith of such apparent acquiescence, incurred large expenditures which will be wholly or partially lost if such rights or objections are subsequently given effect.  This principle finds frequent application in respect of improvements and expenditures upon real property under a claim of right[.]'[60]

---

[59] *See, e.g.*, *Hardwick*, 233 S.W.2d at 421; *Peicke*, 249 S.W. at 1010 (1923) ("We have many times held that a property owner will not be permitted to stand by and allow the street in front of his property to be improved at the expense of the municipality, or the contractor allowed to expend his money in making the improvement, and work to be completed, accepted, and the apportioning of the cost made, without first making some legal objection."); *Realty Sav. Co. v. S. Asphaltoilene Rd. Co.*, 202 S.W. 679, 680 (Ky. 1918) ("A rule equally well established in this state in suits of this character is that the property owner will not be permitted to stand by and allow the street in front of his property to be improved at the instance of the municipality, the contractor to expend his money in making the improvement, the work to be completed and accepted, and the apportionment made upon the faith that the cost was to be a charge upon his property, without first making some legal objection thereto before the work shall have been done.").

[60] 264 S.W.2d 653, 654 (Ky. 1954) (emphasis added).

Yet this is *exactly* what the Coopers were permitted to do in this case. In the years that passed between their purchase of the property and the filing of their claim, they knew that the Fiscal Court maintained the road and built a bridge on it in 2000. They made no legal challenge to this maintenance for sixteen years, but nonetheless successfully had the road declared their private property to the exclusion of the Fiscal Court and the general public for whom the road was maintained.

In the alternative, the Coopers also clearly committed laches in bringing their claim.

> Laches in its general definition is laxness; an unreasonable delay in asserting a right. In its legal significance, it is not merely delay, but delay that results in injury or works a disadvantage to the adverse party. Thus there are two elements to be considered. As to what is unreasonable delay is a question always dependent on the facts in the particular case. Where the resulting harm or disadvantage is great, a relative brief period of delay may constitute a defense while a similar period under other circumstances may not . . . The doctrine of laches is, in part, based on the injustice that might or will result from the enforcement of a neglected right.[61]

As laches is an affirmative defense, it must be pled by the party seeking to assert it.[62] The Bruners did this. During the first round of litigation in this

---

[61] *Denison v. McCann*, 197 S.W.2d 248, 249 (Ky. 1946).

[62] CR 8.03 ("In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense.").

case, the Bruners argued in their memorandum in support of summary judgment that the Coopers' claim failed under the doctrine of laches because they sat idly by and allowed the county to make "a significant investment of time, energy, and most importantly—taxpayer's (sic) money to the maintenance and upkeep [of] this road."  And, again, the Coopers waited sixteen years between purchasing their property encompassing the road and filing to have the road declared their private property.  Because the Coopers had actual knowledge of both the county's maintenance of the road and the public's use of the road throughout that time, this was clearly unreasonable delay.  As for the second element of laches, injury to the adverse party or parties, the Fiscal Court cannot be made whole for the money and manpower it expended over decades on maintaining and improving the road and the Bruners are being unfairly denied reasonable access to their property.

We hold that the Bruners were entitled to a judgment as a matter of law under both of the foregoing theories.

### (2) *The circuit court did not err by finding that the road was a public road by prescription.*

Furthermore, the circuit court found that the Bruners were entitled to summary judgment because Edward Meece Road is a public road by prescription, and we agree.[63]

---

[63] We note here our agreement with the circuit court that the road cannot be considered a county road because a formal order of the Fiscal Court adopting the road has never been produced.  *See, e.g.*, *Kentucky Props. Holding LLC v. Sproul*, 507 S.W.3d 563, 569 (Ky. 2016) ("Since the enactment of Chapter 80, Acts of 1914, a formal order of the fiscal court has been required to establish a county road.").

In *Ellington, supra,* this Court explained that

[a] general and long-continued use of a passway by the public as a right will create the right to continue the use and the owner of the land traversed by the passway who allows the public to use it as a highway for a long period of years under a claim of right will be estopped from denying a dedication to the public. The key to establishment of a public road, therefore, is an implied or express dedication of that road to the public's use.[64]

Dedication of a public road can occur through either statutory, formal means[65] or through common law, informal means.[66] Informal dedication, in turn, can occur through either dedication by estoppel or dedication by prescription.[67] The Bruners' sole assertion is that the road became a public road through dedication by prescription, so this Court need only address that theory.

To establish a public road by prescription, there must be adverse use of the road by the public for the statutory period of fifteen years.[68] The claimant therefore needs to prove by clear and convincing evidence[69] that possession of the road was "(1) hostile 'under a claim of right'; (2) actual; (3) exclusive; (4) continuous; and (5) open and notorious."[70] "County control is not *necessary* to

---

[64] 534 S.W.3d at 792 (internal citations and quotation marks omitted).

[65] *See* KRS 82.400; KRS 178.025.

[66] *Ellington,* 534 S.W.3d at 792.

[67] *Id.*

[68] *Id.* at 798.

[69] *Id.* ("It is the claimant's burden to prove these elements by clear and convincing evidence."). Clear and convincing evidence is "proof of a probative and substantial nature carrying the weight of evidence sufficient to convince ordinarily prudent-minded people." *See, e.g., W.A. v. Cabinet for Health & Family Servs., Commonwealth,* 275 S.W.3d 214, 220 (Ky. App. 2008).

[70] *Ellington,* 534 S.W.3d at 798.

30

establish a common law public road," but it "can be evidence of a public acceptance."[71]

In this case, the Fiscal Court began exercising control over the road under its belief that it was a county road as early as 1976. Prior owners of the relevant properties believed that the road was a county road, and acquiesced to the county's perceived ownership. The Coopers purchased their property in 1993, and Edward Meece Road was included on that property. Since 1976, the Fiscal Court has continued to maintain the road as though it were a county road and built a bridge on it in 2000. The Coopers did not make any legal claim against the county's asserted ownership of the road until 2009, sixteen years after they purchased their property. None of the foregoing facts were disputed. Accordingly, the Fiscal Court's exercise of control over the road met all of the elements of adverse possession for at least sixteen years, exceeding the statutory period of fifteen years. As for the requirement that the road be used by the general public for the statutory period,[72] the Fiscal Court's maintenance of the road was for the benefit of the public, and for thirty-three years the general public believed the road was a county road and used it as a public passway.

---

[71] *Id.* at 793.

[72] *Id.* at 798 ("[O]ne of the essentials of the establishment of a road by prescription is the use of the land in question by the public and such use must be by the public generally as a way common to all … The mere use by a few individuals from time to time, as distinguished from the public generally, does not constitute such use as creates title in the public by prescription.").

Thus, the road is a public road by prescription, and the circuit court's grant of summary judgment is affirmed.

## III. CONCLUSION

Based on the foregoing, we reverse the Court of Appeals and hereby reinstate the circuit court's August 7, 2019 order granting summary judgment in favor of the Bruners.

All sitting. Minton, C.J.; Conley, Hughes, Keller, and VanMeter, JJ., concur. Nickell, J., concurs by separate opinion, in which Keller and VanMeter, JJ., join.

NICKELL, J., CONCURRING and writing separately:

While I concur with the majority's analysis and ultimate conclusion, I write separately to underscore the unique factual and procedural history underlying this case represents an exceedingly rare instance where deviation from strict application of the law of the case doctrine is appropriate. The doctrine should be rigorously, but not mechanically, applied.

The law of the case doctrine "is an iron rule, universally recognized, that an opinion or decision of an appellate court in the same cause is the law of the case for a subsequent trial or appeal however erroneous the opinion or decision may have been." *Union Light, Heat & Power Co. v. Blackwell's Adm'r*, 291 S.W.2d 539, 542 (Ky. 1956). The rule is:

> grounded on convenience, experience and reason. It has been often said that it would be intolerable if matters once litigated and determined finally could be relitigated between the same parties . . . .

32

Notwithstanding the firmness of this rule in general, a number of courts have maintained and held that the rule is not inflexible but is subject to exception, although the exception must be rare and the former decision must appear to be clearly and palpably erroneous. In such a case it is deemed to be the duty of the court to admit its error rather than to sanction an unjust result and deny to litigants or ourselves the right and duty of correcting an error . . . .

A number of other courts have reached the same conclusion in recognizing that the administration of justice requires some flexibility in the rule and that an appellate court not only has power to reconsider a former decision but should depart from it in unusual circumstances . . . .

The court . . . should wipe out the effect of the mistake in the first opinion rather than perpetuate the error which would otherwise result in great wrong to the litigant and establish a bad precedent. That is essential justice.

*Id.* at 542-43 (internal quotation marks and citations omitted). Moreover, this

Court has held:

The State Supreme Court is the final arbiter of the application of the doctrine of law of the case. *Sherley v. Commonwealth,* 889 S.W.2d 794, 797 (Ky. 1994) (citing *King v. West Virginia,* 216 U.S. 92, 30 S.Ct. 225, 54 L.Ed. 396 (1910)). The law of the case doctrine is subject to exceptions. A reviewing court may deviate from the doctrine if its previous decision was clearly erroneous and would work a manifest injustice. *Brown v. Commonwealth,* 313 S.W.3d 577, 610 (Ky. 2010) (internal citations and quotation marks omitted).

*Doyle v. Doyle,* 549 S.W.3d 450, 455 (Ky. 2018).

The particularly troubling circumstances of this case persuade me the circuit court correctly provided equitable relief from its two previous summary judgment orders. I agree this is one of those extremely exceptional cases in which an appellate court should exercise its authority to correct an earlier error rather than perpetuate it. While the law of the case doctrine is an "iron

33

rule," it was never intended to be unmalleable and should remain amenable to flexing without breaking when equity and justice demand. Deviation in this case is warranted. Thus, I concur.

Keller and VanMeter, JJ., join.

COUNSEL FOR APPELLANT:

Bradford Breeding
Brown & Breeding

G. Kirk Smith
Brown & Breeding

COUNSEL FOR APPELLEE:

Matthew J. Baker
Bowling Green, Kentucky